**RECORD NO. 22-3018**

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
### For The District of Columbia Circuit

## UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

**v.**

## JAMES LITTLE,

*Defendant - Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

### BRIEF OF APPELLANT

Joshua B. Carpenter
FEDERAL PUBLIC DEFENDER FOR
  THE WESTERN DISTRICT OF
  NORTH CAROLINA
1 Page Avenue, Suite 210
Asheville, North Carolina 28801
(828) 232-9992

*Counsel for Appellant*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    Parties and Amici

This appeal arises from a criminal proceeding involving the defendant-appellant, James Little, and the plaintiff-appellee, the United States of America. The parties on appeal both appeared below. There are no other parties on appeal, intervenors, or amici.

## B.    Rulings Under Review

The district court interpreted federal sentencing statutes to permit the imposition of a dual sentence—imprisonment and probation—for a single petty offense conviction. The court's written ruling on that issue is set forth at JA 129-44.

## C.    Related Cases

The complaint and indictment in this case charged Little as the sole defendant with no co-defendants. The legal issue presented by this appeal has arisen in other January 6 prosecutions, but counsel is not aware of any pending case in this Court where the issue has been raised or briefed at this time.

# **Table of Contents**

**Page**

Table of Authorities.................................................................................iii

Introduction........................................................................................... 1

Jurisdictional Statement......................................................................... 2

Statement of the Issue ........................................................................... 3

Statutes and Regulations........................................................................ 3

Statement of the Case ............................................................................ 3

    A.    Statutory Background............................................................. 3

    B.    Factual and Procedural History ............................................ 8

Summary of Argument.......................................................................... 11

Standard of Review .............................................................................. 14

Argument.............................................................................................. 14

    I.    Little's sentence is illegal because federal law prohibits
        district courts from imposing both imprisonment *and*
        probation for a single petty offense ..................................... 14

        A.    The plain text of § 3561(a)(3) is susceptible of two
            interpretations, but the surrounding statutory
            context establishes that only the last-antecedent
            interpretation is reasonable......................................... 16

B.   The series-qualifier interpretation needlessly places two statutory provisions in conflict with one another and violates the presumptions against surplusage and repeals by implication ........... 21

C.   The last-antecedent interpretation gives effect to every provision of the statute and produces a coherent statutory scheme .......................................... 27

D.   The government's interpretation authorizes an absurd cycle of never-ending imprisonment and probation ................................................................... 32

E.   Little's plea agreement permits his challenge to the district court's illegal sentence ............................. 38

Conclusion ............................................................................. 40

Certificate of Compliance

Certificate of Filing and Service

Addendum

# Table of Authorities

**Page(s)**

## Cases

*Almendarez-Torres v. United States,*
    523 U.S. 224 (1998) ........................................................................ 30

*Barnhart v. Thomas,*
    540 U.S. 20 (2003) ......................................................................... 18

*Corley v. United States,*
    556 U.S. 303 (2009) ........................................................................ 26

*Davis v. Michigan Dept. of Treasury,*
    489 U.S. 803 (1989) ........................................................................ 16

*Epic Systems Corp. v. Lewis,*
    138 S. Ct. 1612 (2018) ..................................... 12, 21, 23, 24, 30, 35

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ........................................................................ 36

*Johnson v. United States,*
    529 U.S. 694 (2000) ............................................................ 1, 11, 35

*Lockhart v. United States,*
    136 S. Ct. 958 (2016) ........................................................ 18, 19, 27

*Southwest Airlines Co. v. Saxon,*
    142 S. Ct. 1783 (2022) ................................................................... 15

*United States v. Barber,*
    4 F.4th 689 (8th Cir. 2021) ............................................................ 34

*United States v. Cano-Flores,*
    796 F.3d 83 (D.C. Cir. 2015) ......................................................... 37

*United States v. Caplinger,*
 2022 WL 2045373 (D.D.C. June 7, 2022).................................. 11, 24

*United States v. Cohen,*
 617 F.2d 56 (4th Cir. 1980) ...........................................................3-4

*United States v. Cook,*
 594 F.3d 883 (D.C. Cir. 2010)........................................................ 35

*United States v. Cordova,*
 806 F.3d 1085 (D.C. Cir. 2015)....................................................... 14

*United States v. Griffith,*
 1:21-cr-204-4 (October 28, 2021) .................................................... 39

*United States v. Guillen,*
 561 F.3d 527 (D.C. Cir. 2009).......................................................... 38

*United States v. Hunt,*
 843 F.3d 1022 (D.C. Cir. 2016)........................................... 14, 39, 40

*United States v. Nachtigal,*
 507 U.S. 1 (1993) ...................................................................... 35, 36

*United States v. Santos,*
 553 U.S. 507 (2008) ........................................................................ 37

*United States v. Sarko,*
 2022 WL 1288435 (D.D.C. Apr. 29, 2022)...................................... 11

*United States v. Spencer,*
 1:21-cr-147 (doc. no. 70) .......................................................... 10, 11

*West Virginia v. EPA,*
 142 S. Ct. 2587 (2022) .................................................................... 16

*Yellen v. Confederated Tribes,*
    141 S. Ct. 2434 (2021) ............................................................. 19, 20

*Ysleta Del Sur Pueblo v. Texas,*
    142 S. Ct. 1929 (2022) .................................................................. 26

## **Statutes**

18 U.S.C. § 19 ........................................................................... 6, 32

18 U.S.C. § 3231 ............................................................................. 2

18 U.S.C. § 3551 ................................................................... 4, 12, 13

18 U.S.C. § 3551(b) ....................................................... 4, 12, 22, 29

18 U.S.C. § 3553(a) ...................................................................... 10

18 U.S.C. § 3561 ........................................................................... 32

18 U.S.C. § 3561(a)(3).........................................7, 10, 11, 12, 13, 14, 15,
                                                16, 17, 18, 20, 23, 25, 27,
                                                28, 29, 30, 33, 35, 36

18 U.S.C. § 3565(a)(2)................................................................... 33

18 U.S.C. § 3581 ............................................................................. 6

18 U.S.C. § 3583 ................................................... 6, 11, 13, 22, 32

18 U.S.C. § 3583(b)................................................................ 1, 5, 6, 25

18 U.S.C. § 3583(b)(3)................................................... 1, 6, 11, 12, 22, 23,
                                                24, 25, 26

18 U.S.C. § 3583(h)....................................................................... 34

18 U.S.C. § 3651 ...................................................................... 3, 4, 5

18 U.S.C. § 3742 ................................................................ 2

28 U.S.C. § 1291 ................................................................ 2

40 U.S.C. § 5104(e)(2)(G) .................................................. 9

## Other Authorities

Antonin Scalia and Bryan Garner, *Reading Law*:
*The Interpretation of Legal Texts* 150 (2012) ................. 20, 21, 24, 26, 37

Collins Dictionary ("ellipsis"), Available at
http://collinsdictionary.com/us/dictionary/english/ellipsis .................... 17

Federal Bureau of Prisons,
www.bop.gov/inmateloc (reflecting release date of July 8, 2022) ......... 40

Kent, *Commentaries on American Law* ................................... 23

Llewellyn, Remarks on the Theory of Appellate Decision and the
Rules or Canons About How Statutes Are To Be Construed,
3 Vand. L. Rev. 395 (1950) ..................................................... 18

Pub. L. No. 100-182, § 8, 101 Stat. 1266 (1987) ................................ 6, 22

Pub. L. No. 103-322, § 280004, 108 Stat. 1796 (1994) ...................... 7, 30

S. Rep. No. 98-225 (1983) ......................................... 5, 6, 17, 22

Thomas M. Cooley,
*A Treatise on the Constitutional Limitations Which Rest upon the
Legislative Power of the States of the American Union* 58 (1868) .......... 21

Webster's Third New International Dictionary 737 (2002),
Available at
http://collinsdictionary.com/us/dictionary/english/ellipsis .................... 17

# **Introduction**

This appeal presents an interpretive question about the federal sentencing statutes that has broad implications. For a defendant sentenced to imprisonment for a federal felony, Congress has authorized "postconfinement monitoring" through supervised release. *Johnson v. United States*, 529 U.S. 694, 697 (2000); *see* 18 U.S.C. § 3583(b). The same is true for a defendant convicted of a Class A misdemeanor. 18 U.S.C. § 3583(b)(3). But for a defendant like James Little, sentenced to prison for a less-serious "petty offense," Congress chose not to authorize a post-imprisonment term of supervised release. *See id.* (excluding "a petty offense").

The government has decided that Congress's prohibition on post-confinement monitoring for petty offenders is bad penal policy, at least for prosecutions arising from the events at the U.S. Capitol on January 6, 2021. In that context, the government wants this Court to authorize both imprisonment *and* post-confinement monitoring for a defendant convicted of a single petty offense. To achieve that end, the government takes the novel position that federal courts may impose a dual sentence—that is, a term of imprisonment and a term of probation—for

a single petty offense. Because probation and supervised release are functionally equivalent under federal law (except that probation is in lieu of imprisonment while supervised release follows imprisonment), this outcome would effectively nullify the statutory prohibition on supervised release for petty offenders. It would also turn Congress's penalty scheme on its head by subjecting a petty offender to the same amount of post-confinement supervision as a Class A felon, and five times more than a Class E felon or Class A misdemeanant.

This Court should reject the government's interpretation of federal sentencing statutes and reverse the illegal sentence imposed by the district court in this case.

## Jurisdictional Statement

The United States District Court for the District of Columbia had jurisdiction over this criminal case under 18 U.S.C. § 3231. The district court entered a written judgment on March 17, 2022, and an amended judgment on March 24, 2022. JA 226, 234. Little filed a timely notice of appeal on March 21, 2022. JA 233. This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

2

## Statement of the Issue

Do federal sentencing statutes permit the imposition of a dual sentence—imprisonment *and* probation—for a single petty offense?

## Statutes and Regulations

The pertinent statutes are set forth in an addendum to this brief.

## Statement of the Case

### A.    Statutory Background

This case requires the Court to interpret federal sentencing statutes. So we begin with a brief overview of the relevant provisions and their place in Congress's overall sentencing scheme for federal offenses.

From 1958 until 1984, federal law provided sentencing courts with the authority in certain cases to impose a term of imprisonment to be followed by a term of probation. *See* 18 U.S.C. § 3651 (1983). This so-called "split-sentence" provision did not apply to petty offenses (i.e., those subject to a maximum prison sentence of six months or less). Instead, it applied only to "any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months." *United States v. Cohen*, 617 F.2d 56, 58 n.1 (4th

3

Cir. 1980) (quoting § 3651). For such offenses, the statute allowed a court to impose "a sentence in excess of six months" while ordering that the defendant serve "a period not exceeding six months" in prison and that "the remainder of the sentence be suspended and the defendant place on probation for such period." *Id.*

When Congress passed the Sentencing Reform Act of 1984, it repealed this provision and prohibited courts from imposing both a sentence of imprisonment and a sentence of probation. This prohibition is reflected in 18 U.S.C. § 3551, which authorizes a court to sentence a convicted defendant to "a term of probation . . . *or* . . . a term of imprisonment." 18 U.S.C. § 3551(b) (emphasis added).[1] The prohibition is reiterated in the provision at issue in this case, 18 U.S.C. § 3561, titled "Sentence of Probation." At the time of passage, that provision stated:

-----

[1] The text of this provision provides:

(b) INDIVIDUALS.—An individual found guilty of an offense shall be sentenced, in accordance with the provisions of section 3553, to—
    (1) a term of probation as authorized by subchapter B;
    (2) a fine as authorized by subchapter C; or
    (3) a term of imprisonment as authorized by subchapter D.
A sentence to pay a fine may be imposed in addition to any other sentence.

(a)    In General.—A defendant who has been found guilty of an offense may be sentenced to a term of probation unless—

   (1)    the offense is a Class A or Class B felony and the defendant is an individual;

   (2)    the offense is an offense for which probation has been expressly precluded; or

   (3)    the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense.

18 U.S.C. § 3561 (1985). These provisions unambiguously prohibited federal courts from imposing a dual sentence of imprisonment and probation. The Senate Judiciary Committee explicitly acknowledged this prohibition in its report accompanying the Act:

> Subsection (a)(3) differs from the provision of 18 U.S.C. § 3651 [i.e., the split-sentence provision repealed by the Act] that permits a sentence to be split between a term of imprisonment and a suspended sentence with probation by specifically barring a sentence to probation in a case in which a defendant has been sentenced at the same time to a term of imprisonment either for the same offense or for a different offense.

S. Rep. No. 98-225, at 89 (1983).

At the same time that Congress prohibited the practice of imposing an imprisonment-plus-probation sentence, it created an alternative mechanism for post-confinement monitoring. Under

5

18 U.S.C. § 3583(b), the Act permitted a sentencing court to impose a term of supervised release following imprisonment. In explaining the bar on an imprisonment-plus-probation sentence, the Senate report explained that "[t]he same result may be achieved by a more direct and logically consistent route—under sections 3581 and 3583, the court may provide that the convicted defendant serve a term of imprisonment followed by a term of supervised release." S. Rep. No. 98-225, at 89. Under the original version of § 3583(b), Congress provided sentencing courts with authority to impose supervised release after imprisonment for all types of offenses. *See* 18 U.S.C. § 3583(b) (1985).

In 1987, however, Congress amended § 3583(b) to prohibit supervised release for petty offenders. It did so by inserting a parenthetical—"other than a petty offense"—following the term "misdemeanor" in § 3583(b)(3). *See* Pub. L. No. 100-182, § 8, 101 Stat. 1266 (1987). The provision, as amended, currently provides that "the authorized terms of supervised release are— . . . for a misdemeanor (other than a petty offense), not more than one year." 18 U.S.C. § 3583(b)(3) (2022). A "petty offense," in turn, is defined as "a Class B misdemeanor, a Class C misdemeanor, or an infraction." 18 U.S.C. § 19.

6

Thus, since 1987, federal courts have lacked the authority to sentence a petty offender to supervised release following a term of imprisonment.

In 1994, Congress added the language at issue here—"that is not a petty offense"—at the end of 18 U.S.C. § 3561(a)(3). *See* Pub. L. No. 103-322, § 280004, 108 Stat. 1796 (1994). Before the amendment, in a case with two (or more) petty offense convictions, the statute barred courts from imposing a sentence of imprisonment for one petty offense and a sentence of probation for the second. As amended, the statute now prohibits probation if "the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." 18 U.S.C. § 3561(a)(3). By adding the "that is not a petty offense" clause, the amendment allows a defendant convicted of two petty offenses to receive a sentence of imprisonment on one and a sentence of probation on the other (assuming, of course, that the defendant is not sentenced to imprisonment at the same time for a non-petty offense). The question presented here is whether the amended language also authorizes dual punishment—imprisonment and probation—for a single petty offense. As explained below, it does not.

**B.    Factual and Procedural History**

This case arose from the events of January 6, 2021. As is well known, Congress convened in a joint session that day to certify the electoral-college vote count for the 2020 presidential election. JA 30. During this time, according to the government, members of the public were not authorized to enter the Capitol building or its exterior plaza. JA 30. Nonetheless, a large crowd gathered outside the building, and "shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts." JA 31. These actions forced Congress to suspend the proceedings for several hours and caused approximately $1.4 million worth of damage to the Capitol building. JA 31.

The defendant, James Little, was a non-violent participant in the January 6 events. He traveled to Washington from his home in North Carolina on January 5, 2021, to attend former President Trump's "Stop the Steal" rally on January 6. JA 13. At the President's urging, Little followed the crowd on a march to the Capitol, where he entered the building. It is undisputed that, unlike some other participants in the

8

riot, Little did not personally engage in any violent or assaultive behavior. Instead, he took photographs while walking through the building and texted messages to a relative, including "We just took over the Capital!" and "We are stopping treason!" JA 12-13. The relative responded that Little's own conduct was "treason" and warned him, "If you don't condemn this, never bother speaking to me again!" JA 12. Little returned to North Carolina on the evening of January 6. JA 13.

Little's relative informed the FBI about Little's participation in the riot, and FBI agents interviewed Little on January 13. JA 13. Little admitted his conduct, explaining that he had been "caught up in the moment" when he entered the Capitol and sent the text about overtaking it. JA 13.

Based on Little's conduct, the government charged him with four misdemeanor offenses. JA 10-15, 16-18. He ultimately pled guilty to a single petty offense, violating 40 U.S.C. § 5104(e)(2)(G) by parading, demonstrating, or picketing in a Capitol building. JA 19, 34-50.

After Little's guilty plea, the government filed a sentencing memorandum seeking a dual sentence consisting of one month of imprisonment followed by three years of probation. JA 52. Little argued

that the government's proposed sentence was illegal. Citing Judge

Kollar-Kotelly's decision in *United States v. Spencer*, 1:21-cr-147 (doc.

no. 70), he contended that the court had authority to impose

imprisonment *or* probation, but not both. JA 90-91. He also argued that

a dual sentence was greater than necessary under the sentencing

factors in 18 U.S.C. § 3553(a), and he highlighted in particular that

many similarly situated offenders had received probation-only

sentences. JA 93-115.

At sentencing, the district court (Judge Lamberth) concluded that

"[o]nly a split sentence would adequately serve the goals of sentencing"

and rejected *Spencer*'s holding that such a sentence is not statutorily

authorized. JA 132. In doing so, the court acknowledged that "[t]here

are two possible ways" to read § 3561(a)(3)'s text, and it chose to adopt

the one that permits the imposition of both imprisonment and probation

for a single petty offense. JA 134-43. The court then sentenced Little to

"sixty days' imprisonment and thirty-six months' probation." JA 144; *see*

JA 206, 227-28. Little filed a timely notice of appeal. JA 233.

Following the sentencing in this case, Judge Friedman issued an

opinion agreeing with Judge Lamberth on the legality of an

10

imprisonment-plus-probation sentence for a single petty offense. *See United States v. Caplinger*, 2022 WL 2045373 (D.D.C. June 7, 2022). And Judge Kollar-Kotelly issued an opinion reversing her prior opinion in *Spencer*. *See United States v. Sarko*, 2022 WL 1288435 (D.D.C. Apr. 29, 2022).

## Summary of Argument

The district court explained that the statutory provision at issue here, 18 U.S.C. § 3561(a)(3), could be read in "two possible ways." JA 136. Under one reading, based on the last-antecedent rule, the provision prohibits a court from imposing both imprisonment and probation for a single petty offense. The government's reading, by contrast, is based on the series-qualifier canon and allows a dual sentence—imprisonment and probation—for a single petty offense.

The series-qualifier interpretation of § 3561(a)(3) makes a mess of the overall statutory sentencing scheme. In 18 U.S.C. § 3583, for example, Congress authorizes courts to impose "postconfinement monitoring" through a term of supervised release following imprisonment, *Johnson*, 529 U.S. at 697, but the statute prohibits supervised release for "a petty offense." 18 U.S.C. § 3583(b)(3). The

series-qualifier interpretation of § 3561(a)(3) renders § 3583(b)(3)'s petty-offense exclusion a nullity by allowing a court to order post-confinement monitoring through a term of probation. This interpretation conflicts with the presumptions against surplusage and repeals by implication, and adopting it would violate this Court's "duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). Likewise, the series-qualifier interpretation also places § 3561(a)(3) into direct conflict with 18 U.S.C. § 3551, which authorizes a sentence of imprisonment *or* probation, but not both, for "an offense." 18 U.S.C. § 3551(b). Under the government's reading, § 3561(a)(3) supersedes this provision by authorizing a dual sentence for a single petty offense, even though such a sentence is prohibited for more serious offenses.

The government's reading would also create other bizarre results. For example, a defendant convicted of a petty offense would face a five year term of post-confinement supervision, whereas more serious offenders would face lesser terms of three years (Class C and D felons) or one year (Class E felons and Class A misdemeanants). And while

12

Congress placed limits on the revocation and re-imprisonment cycle in the supervised-release provisions, the government's interpretation of § 3561(a)(3) would eschew those limits and subject petty offenders—but not more serious offenders—to a potentially never-ending cycle of probation, revocation, and re-imprisonment.

The last-antecedent interpretation of § 3561(a)(3) prevents all of these textual and contextual problems and, instead, places § 3561(a)(3) in harmony with the remainder of the federal sentencing regime. This interpretation avoids the conflicts with § 3551 and § 3583, while giving meaning and effect to all provisions of the statutory scheme. It also reinforces the logical, graduated penalty structure that serves as the foundation of an equitable sentencing regime, and it does not create the potential for a never-ending cycle of revocation, re-imprisonment, and additional probation for a single petty offense.

For these reasons, the Court should conclude that the last-antecedent interpretation is correct. Little's challenge to his illegal sentence is permitted under his plea agreement, both because the sentence exceeds the statutory maximum and because Little did not knowingly and intelligently waive his right to challenge an

13

imprisonment-plus probation sentence. This Court should reverse his sentence and remand with instructions for the district court to enter an amended judgment removing the term of probation.

## Standard of Review

This case presents a question of statutory interpretation, which this Court reviews de novo. *United States v. Cordova*, 806 F.3d 1085, 1098 (D.C. Cir. 2015). This Court also reviews de novo whether the appeal waiver in Little's plea agreement covers the issue he presents on appeal. *United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016).

## Argument

### I. Little's sentence is illegal because federal law prohibits district courts from imposing both imprisonment *and* probation for a single petty offense.

This case turns on the meaning of 18 U.S.C. § 3561(a)(3), which prohibits a court from imposing probation if "the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." Viewed in isolation, this text is susceptible of two interpretations. JA 136 (acknowledging that "[t]here are two possible ways" to read § 3561(a)(3)'s text). If the restrictive phrase ("that is not a petty offense") modifies only the phrase that

14

precedes it ("a different offense"), then the provision permits a
defendant convicted of two petty offenses to receive a sentence of
imprisonment on one offense and probation on the other, but prohibits
dual punishment—imprisonment and probation—for a single petty
offense. In the government's view, however, the restrictive phrase also
reaches back to modify the phrase before the disjunctive. Under that
reading, the provision would authorize dual punishment—
imprisonment and probation—for a single petty offense. The text,
context, and applicable principles of statutory interpretation establish
that the former reading is correct.

Although the proper interpretation of § 3561(a)(3) "begin[s] with
the text, "we cannot review a single provision's text "in isolation."
*Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022). Instead,
to "discern" a text's "ordinary meaning," the "words . . . must be read
and interpreted in their context." *Id.* at 1788 (cleaned up). After all, as
the Supreme Court has repeatedly explained, "It is a fundamental
canon of statutory construction that the words of a statute must be read
in their context and with a view to their place in the overall statutory

scheme." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)).

Here, the statutory context establishes that only one interpretation of § 3561(a)(3)'s text is permissible: the phrase "that is not a petty offense" modifies only its immediate antecedent, "a different offense." The government's contrary reading—adopted here by the district court—would nullify a related statutory provision and turn Congress's otherwise sensible penalty structure on its head.

### A. The plain text of § 3561(a)(3) is susceptible of two interpretations, but the surrounding statutory context establishes that only the last-antecedent interpretation is reasonable.

As noted above, Judge Lamberth began his textual analysis by observing that § 3561(a)(3)'s text can be understood in "two possible ways." JA 136. In considering those two possibilities, the court focused its textual analysis on determining whether the word "same" in § 3561(a)(3) serves as a stand-alone noun or as an adjective that modifies the term "offense." JA 136-39. But that parts-of-speech analysis does not solve the substantive question about § 3561(a)(3)'s meaning.

The court's textual analysis overlooked that § 3561(a)(3)'s text contains an "ellipsis" or "elliptical construction"—that is, "the omission of one or more items from a construction in order to avoid repeating the identical or equivalent items." Collins Dictionary ("ellipsis")[2]; *see* Webster's Third New International Dictionary 737 (2002) (defining "ellipsis" as "omission of one or more words that are obviously understood but must be supplied to make a construction grammatically complete"). So rather than say "the same offense or a different offense" in § 3561(a)(3), Congress omitted the first "offense" to avoid repetition. The text makes this apparent, and the legislative history confirms it by summarizing the provision without the elliptical construction. *See* S. Rep. No. 98-225, at 89 (1983) (explaining that "subsection (a)(3)" bars probation for a defendant "sentenced at the same time to a term of imprisonment either for the same offense or for a different offense").

The use of an elliptical construction to avoid repetition is a purely stylistic device that does not answer the key substantive question:  does the phrase "that is not a petty offense"—which Congress tacked onto the statute in a 1994 amendment—modify only its closest antecedent

---

[2] Available at http://collinsdictionary.com/us/dictionary/english/ellipsis.

17

("a different offense") or does it also modify the elliptical phrase ("the same [offense]")?

Resolving that question presents a contest between two canons of statutory interpretation: the rule of the last antecedent and the series-qualifier principle. *See* Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed, 3 Vand. L. Rev. 395, 401 (1950) ("[T]here are two opposing canons on almost every point."). The last-antecedent rule provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (Scalia, J.). Under this rule, § 3561(a)(3)'s limiting clause ("that is not a petty offense") modifies only the phrase that immediately precedes it ("a different offense"). The "so-called series-qualifier principle," by contrast, "requires a modifier to apply to all items in a series when such an application would represent a natural construction." *Lockhart v. United States*, 136 S. Ct. 958, 965 (2016). Under this rule, the modifier in § 3561(a)(3) would apply to both items in the disjunctive list.

The provision's text does not resolve this choice definitively, but it does provide one important clue. If Congress had intended the construction accomplished by a series-qualifier interpretation, it could have achieved that outcome much more naturally by replacing "the same or a different" with "an" or "any." Such a statute—prohibiting probation for a defendant sentenced to prison at the same time "for any offense that is not a petty offense"—would have been simple and unambiguous. But that is not the statute Congress wrote. Instead, by dividing the universe of offenses into two categories (the "same" and "different"), the text implies that the two categories will be treated differently.

More generally, the choice between the last-antecedent and series-qualifier canons depends upon context. Indeed, the Supreme Court tempers its application of each canon with a consider-the-context caveat. The Court, for example, "has long acknowledged that structural or contextual evidence may rebut the last antecedent inference." *Lockhart*, 136 S. Ct. at 965 (cleaned up). Likewise, the Court has "reiterated" that "the series-qualifier canon gives way when it would yield a contextually implausible outcome." *Yellen v. Confederated*

*Tribes*, 141 S. Ct. 2434, 2448 (2021) (cleaned up). According to the

*Reading Law* treatise, a careful consideration of context is especially

important when evaluating the series-qualifier canon:

> Perhaps more than most of the other canons, [the series-qualifier canon] is highly sensitive to context. Often the sense of the matter prevails: *He went forth and wept bitterly* does not suggest that he went forth bitterly.

Antonin Scalia and Bryan Garner, *Reading Law*: *The Interpretation of*

*Legal Texts* 150 (2012); *see also Facebook, Inc. v. Duguid*, 141 S. Ct.

1163, 1173 (2021) (Alito, J., concurring in the judgment) ("[C]anons are

useful tools, but it is important to keep their limitations in mind. This

may be especially true with respect to . . . the 'series-qualifier' canon").

In short, focusing solely on § 3561(a)(3)'s text in isolation, through

a purely grammatical or parts-of-speech analysis, will not solve the

interpretive dilemma. The Supreme Court recently reiterated this

point, noting that "the most grammatical reading of a sentence in a

vacuum does not always produce the best reading in context."

*Confederated Tribes*, 141 S. Ct. at 2448. Here, as explained below, the

surrounding statutory context demonstrates that the last-antecedent

rule provides "the best reading" of § 3561(a)(3).

20

**B.      The series-qualifier interpretation needlessly places two statutory provisions in conflict with one another and violates the presumptions against surplusage and repeals by implication**.

When interpreting a statutory scheme, such as the federal sentencing regime at issue in this case, the judiciary has a "duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Systems Corp.*, 138 S. Ct. at 1619. This interpretive principle has deep roots in American law. In Scalia and Garner's *Reading Law* treatise, the authors cite a mid-19th century treatise for the same proposition: "[O]ne part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together." *Reading Law*, at 180 (quoting Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union* 58 (1868)).

Here, the series-qualifier interpretation would create a direct conflict between two statutory provisions about the availability of post-confinement monitoring for a single petty offense. Since the Sentencing Reform Act of 1984, the statutory scheme has made clear that the proper mechanism for post-confinement monitoring is supervised release, not probation. It does so by barring a dual sentence of

21

imprisonment and probation for "an offense" (*see* § 3551(b)) and by authorizing instead a term of supervised release following imprisonment (*see* § 3583). *See generally* S. Rep. No. 98-225, at 89 (1983). The series-qualifier interpretation would contradict this feature of the statutory scheme by permitting post-release supervision for "an offense" via probation instead of supervised release.

More specifically, and more problematically, the series-qualifier interpretation would nullify § 3583(b)(3)'s prohibition on post-confinement monitoring for "a petty offense." When Congress first passed the Sentencing Reform Act, the statute authorized one year of supervised release after imprisonment for any misdemeanor offense, including a petty offense. *See* 18 U.S.C. § 3583(b)(3) (1985). In 1987, however, Congress amended the statute to prohibit supervised release for "a petty offense." *See* Pub. L. No. 100-182, § 8, 101 Stat. 1266 (1987). Since that amendment, § 3583(b)(3) has authorized up to one year of supervised release for "a misdemeanor (other than a petty offense)." Thus, under that provision, a sentencing court can order one year of post-confinement monitoring via supervised release for a Class A misdemeanor but may not do so for petty offenses (Class B

misdemeanors, Class C misdemeanors, and infractions). *See* 18 U.S.C.

§ 3583(b)(3); *see also* 18 U.S.C. § 19 (defining "petty offense"). Under the

series-qualifier interpretation of § 3561(a)(3), the prohibition on

supervised release for petty offenses in § 3583(b)(3) becomes

meaningless, as a court could simply escape the prohibition by ordering

imprisonment plus probation for "a petty offense."

In other words, the series-qualifier interpretation of § 3561(a)(3)

would effectively repeal the 1987 amendment's prohibition on

supervised release for "a petty offense" by authorizing post-confinement

monitoring for any and every petty offense conviction. That outcome

would violate another well-established principle of statutory

interpretation: the presumption against repeals by implication. When

addressing a potential conflict between statutory provisions, the courts

"come armed with the strong presumption that repeals by implication

are disfavored and that Congress will specifically address preexisting

law when it wishes to suspend its normal operations in a later statute."

*Epic Systems Corp.*, 138 S. Ct. at 1624 (cleaned up). This presumption

also has deep roots in American law. Scalia and Garner cite a late-19th

century edition of Kent's *Commentaries on American Law* for the

23

proposition that repeals by implication are "very much disfavored."

*Reading Law*, at 327 n.1.

As the Supreme Court has explained, the presumption arises from "[r]espect for Congress as drafter," as well as "respect for the separation of powers." *Epic Systems Corp.*, 138 S. Ct. at 1624. Without the presumption, the courts could be easily transformed into a policymaking body:

> Allowing judges to pick and choose between statutes risks transforming them from expounders of what the law *is* into policymakers choosing what the law *should be*. Our rules aiming for harmony over conflict in statutory interpretation grow from an appreciation that it's the job of Congress by legislation, not this Court by supposition, both to write the laws and to repeal them.

*Id.*

This underlying rationale for the presumption is particularly important in this case. In adopting the series-qualifier interpretation in a different January 6 case, Judge Friedman reasoned that doing so was necessary to fill a "gap" created by § 3583(b)(3)'s prohibition on supervised release for petty offenses. *See Caplinger*, 2022 WL 2045373, *7. But what Judge Friedman describes as a "gap" is, in fact, a deliberate legislative choice made by Congress. The petty-offense

24

prohibition in § 3583(b)(3) is not an oversight that arose by mistake when the Sentencing Reform Act overhauled federal sentencing law. On the contrary, Congress added the prohibition in a subsequent, targeted amendment for the purpose of excluding petty offenses—but not Class A misdemeanors or felonies—from the supervised-release provision. The "gap" thus reflects a congressional choice that someone convicted of a single petty offense should not be subjected to the same combination of imprisonment *and* post-confinement supervision that applies to more serious offenses.

This choice reflects a permissible legislative policy decision, and the presumption against repeals by implication seeks to ensure that such decisions are not overridden by non-legislative bodies such as courts or agencies. Judge Friedman's reasoning in *Caplinger* conflicts with this rationale. If § 3583(b)(3)'s prohibition on post-confinement monitoring reflects a "gap" in need of fixing, Congress must be the one to act. And nothing in the legislative text suggests that Congress intended to repeal § 3583(b)'s prohibition on imposing supervised release in a petty offense case when it amended § 3561(a)(3) in 1994. After all, if Congress had intended the 1994 amendment to permit post-

25

confinement monitoring for a single petty offense, the simple and logical way to do so would have been repealing the prohibition on supervised release in "a petty offense" case, which had been added to § 3583(b)(3) in 1987.

Viewed through a different lens, the series-qualifier interpretation fails because it "defies yet another of our longstanding canons of statutory construction"—that is, the surplusage canon. *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022). Under that canon, courts "must normally seek to construe Congress's work 'so that effect is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Id.* at 1939 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). The *Reading Law* treatise summarizes the surplusage canon similarly, explaining that "[i]f possible, every word and every provision is to be given effect." *Reading Law*, at 174. And "none [of the words] should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *Id.*

The surplusage canon undercuts the government's interpretation. As explained above, the clause Congress added to § 3583(b)(3) in the 1987 amendment—"other than a petty offense"—becomes entirely

meaningless under the series-qualifier interpretation of § 3561(a)(3).
Under the government's interpretation, those words "have no
consequence" because a court can simply authorize post-confinement
supervision for a petty offense via probation.

In sum, the government's series-qualifier interpretation creates
serious contextual problems. This Court should reject it.

**C.    The last-antecedent interpretation gives effect to
every provision of the statute and produces a
coherent statutory scheme.**

The last-antecedent interpretation does not create any contextual
problems. It gives meaning and effect to every word in the various
statutory sentencing provisions. And it harmonizes the overall statutory
scheme through a logical, graduated penalty structure.  In short, "the
rule of the last antecedent is well supported by context and the [series-
qualifier] alternative is not." *Lockhart*, 136 S. Ct. at 968.

The district court's rationale for rejecting that conclusion was
based in large part on a misunderstanding of the statutory text. In the
court's view, the defendant's last-antecedent interpretation of
§ 3561(a)(3) "renders the phrase 'that is not a petty offense'
meaningless." JA 140. Based on that understanding, the court invoked

27

the surplusage canon in favor of a series-qualifier interpretation of

§ 3561(a)(3).

This rationale is incorrect. Contrary to the court's understanding, the phrase "that is not a petty offense" does retain meaning under a last-antecedent interpretation. Consider, for example, a case where a defendant is convicted of two petty offenses. Before Congress added "that is not a petty offense" to § 3561(a)(3), the provision barred a sentencing court from imposing a sentence of imprisonment for one offense and a sentence of probation for the second offense. It did so because it provided, in relevant part, that probation was not permitted if "the defendant is sentenced at the same time to a term of imprisonment for . . . a different offense." 18 U.S.C. § 3561(a)(3) (1993).

The 1994 amendment—adding "that is not a petty offense"—changed the range of possible sentences in this scenario. Now, based on the amended statutory language, a sentencing court has the authority to impose a sentence of imprisonment for one petty offense while imposing a sentence of probation for the other. Thus, contrary to the district court's understanding, the phrase "that is not a petty offense" retains meaning under a last-antecedent interpretation.

28

This interpretation also harmonizes § 3561(a)(3) with § 3551(b). Under the latter provision, a district court is authorized to impose probation or imprisonment, but not both, for "[a]n individual found guilty of *an offense.*" 18 U.S.C. § 3551(b) (emphasis added). Because § 3551(b) uses the singular ("an offense"), it leaves open the question whether a defendant in a multi-count case could receive a dual sentence of imprisonment *and* probation. That question is answered by § 3561(a)(3), which—under either possible interpretation—sets forth two rules for multi-count cases: (1) if a defendant is sentenced to imprisonment for a non-petty offense, the court may not impose probation on a second count; and (2) if a defendant is sentenced to imprisonment for a petty offense, the court may impose probation on a second count.

The government's series-qualifier interpretation creates an unnecessary conflict between the two provisions in cases involving a single petty offense. While § 3551(b) prohibits a dual sentence for someone convicted of "an offense," the government's interpretation of § 3561(a)(3) would dictate the opposite rule by allowing a dual sentence of a single petty offense. Such an outcome would violate this Court's

29

"duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Systems Corp.*, 138 S. Ct. at 1619.

The legislative text of the 1994 amendment further supports the last-antecedent interpretation of § 3561(a)(3). The amendment, passed as part of the Violent Crime Control and Law Enforcement Act of 1994, was the sole provision in a section titled "Authorization of Probation for Petty Offenses in Certain Cases." *See* Pub. L. No. 103-322, § 280004, 108 Stat. 1796 (1994). The inclusion of "in certain cases" in this title is instructive. *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute") (internal quotation marks omitted). If Congress had intended the amendment to authorize probation in any and every petty-offense case—including those with just one conviction—the inclusion of "in certain cases" in the title would make little sense. Congress would have simply titled the provision, "Authorization of Probation for Petty Offenses." By specifying that the authorization extends only to "certain cases," the title indicates that a subset of petty-offense cases exist where probation is not authorized. And that is true under the last-

30

antecedent interpretation: For any case involving a single petty offense where the defendant is sentenced to imprisonment, the statute does not authorize a term of probation.

The last-antecedent interpretation also harmonizes the penalty structure in the broader statutory scheme. Under that interpretation, the most-serious offenses carry the lengthiest terms of post-conviction monitoring while the least-serious offenses do not authorize any post-confinement monitoring. By contrast, under the government's interpretation, the most-serious and least-serious offenses carry the exact same term of post-confinement monitoring because the maximum term of probation for a petty offense is five years.  And the offenses in the middle—from Class C felonies down to Class A misdemeanors—each carry lesser terms of post-conviction monitoring than a single petty offense. The penalty structure under each interpretation is set out in the following chart:

| Offense Type | Authorized Term of Post-Confinement Monitoring | |
|---|---|---|
| | Last-Antecedent Interpretation | Series-Qualifier Interpretation |
| Class A felony | 5 years | 5 years |
| Class B felony | 5 years | 5 years |
| Class C felony | 3 years | 3 years |
| Class D felony | 3 years | 3 years |
| Class E felony | 1 year | 1 year |
| Class A misdemeanor | 1 year | 1 year |
| Petty Offense (Class B or C misdemeanor, or an infraction) | none | 5 years |
| Sources: 18 U.S.C. §§ 19, 3561, 3583. | | |

As the chart illustrates, the last-antecedent interpretation produces a coherent, graduated penalty structure. Under the series-qualifier interpretation, by contrast, the statute inexplicably provides that a single petty offense is subject to five times more post-confinement supervision than a Class A misdemeanor or a Class E felony—and the same amount as a Class A felony. This outcome is implausible, and the Court should reject it.

**D.    The government's interpretation authorizes an absurd cycle of never-ending imprisonment and probation.**

The contextual implausibility of the government's series-qualifier interpretation does not end with this point. Instead, the most absurd

32

aspect of the government's interpretation is that it authorizes an endless cycle of imprisonment and probation that applies solely to petty offenses, but not to more serious felony offenses.

Consider the following scenario. A petty offender is sentenced to a term of imprisonment followed by probation, as the government asserts is permissible under the series-qualifier interpretation. The defendant completes imprisonment, but "violates a condition of probation at any time prior to the expiration or termination of the term of probation." 18 U.S.C. § 3565(a)(2). This violation authorizes the court to "revoke the sentence of probation and resentence the defendant" to any sentence that was originally authorized. *Id.* At resentencing, under the government's interpretation of § 3561(a)(3), the court would be authorized to impose again the same imprisonment-plus-probation sentence, and this cycle could repeat itself endlessly.

This never-ending cycle of confinement and post-confinement supervision for a petty offense would not, by contrast, be possible for a Class A felony. In that context, the statutory scheme prevents the never-ending cycle by restricting the amount of additional supervised release that can be imposed following a revocation. It does so by

subtracting the length of the revocation sentence of imprisonment from the otherwise applicable maximum term of supervised release. 18 U.S.C. § 3583(h) ("The length of such a [post-revocation] term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release."). As a result, the imprisonment-supervision-revocation cycle ends when the cumulative revocation sentence of imprisonment adds up to the statutory maximum term of supervision. *See, e.g., United States v. Barber*, 4 F.4th 689, 691 (8th Cir. 2021) (determining the available term of supervision by subtracting the prior revocation sentences—three months and seven months—from the authorized term of supervised release for the underlying offense). For a Class A felony, the authorized term of supervised release is five years, but it is only one year for a Class E felony or a Class A misdemeanor.

In contrast to these limits on supervised-release revocations, Congress did not place similar statutory limits on probation revocation proceedings.  And the reason is obvious: the statutory scheme treats probation as an *alternative* to imprisonment and provides supervised

34

release as the sole mechanism for "postconfinement monitoring." *Johnson*, 529 U.S. at 697; *see also United States v. Nachtigal*, 507 U.S. 1, 2 (1993) (describing probation under § 3561(a)(3) "[a]s an alternative to a term of imprisonment"). Thus, if a defendant on probation for a felony offense (or Class A misdemeanor) is revoked and sentenced to imprisonment following a violation, any subsequent supervision would be through a term of supervised release—and the statutory limits on supervised release would apply to prevent the never-ending cycle (as described above).

Under the government's series-qualifier interpretation, however, no limits would apply to petty offenses, meaning that a petty offender—but not a Class A felon—could be subjected to the never-ending cycle of revocation, re-imprisonment, and additional supervision. That interpretation must fail not only because it would unnecessarily place the statute's provision "at war with one another," *Epic Systems Corp.*, 138 S. Ct. 1612 at 1619, but also because it would produce an absurd result that Congress cannot possibly have intended. *See United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) ("A statutory outcome is absurd if it defies rationality by rendering a statute nonsensical or

superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended it."). The government's interpretation would also raise serious constitutional questions under: (1) the double jeopardy clause, by permitting multiple punishments for the same offense; (2) the due process clause, by permitting a cumulative imprisonment sentence that exceeds the statutory maximum of six months; and (3) the jury-trial clause, by permitting a sentence that exceeds the six-month statutory maximum for which the jury right presumptively does not attach, *see Nachtigal*, 507 U.S. at 3-4. *See generally FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009) (Scalia, J.) (explaining that the "canon of constitutional avoidance is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts").

The last-antecedent interpretation harmonizes the statutory scheme and avoids the absurd and constitutionally suspect consequences that flow from the series-qualifier interpretation. Based on the relevant statutory text and context, this Court should conclude that the last-antecedent rule provides the best reading of § 3561(a)(3).

36

Finally, "even if the statute were ambiguous in the sense of *permitting* the government's construction, '[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.'" *United States v. Cano-Flores*, 796 F.3d 83, 93–94 (D.C. Cir. 2015) (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008)). "This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *Santos*, 553 U.S. at 514; *see also* Scalia & Garner at 190–91, 296–301 ("[A] fair system of laws requires precision in the definition of offenses and punishments.").

*      *      *

In sum, the statute does not authorize the dual punishment of imprisonment *and* probation for a single petty offense. As result, the district court's sentence in this case is unlawful.

37

**E.   Little's plea agreement permits his challenge to the district court's illegal sentence.**

As part of his plea agreement, Little waived most of his appellate rights. JA 22-23. But, as relevant here, he reserved the right to appeal a sentence "above the statutory maximum."  JA 23.

This reservation permits Little's challenge to the district court's imprisonment-plus-probation sentence. As explained above, the statute authorized a sentence of imprisonment *or* a sentence of probation—but not both. In other words, the "maximum" sentence permitted by statute is either imprisonment or probation. By imposing both, the district court imposed a sentence "above" the maximum permitted by statute. Accordingly, Little's appeal is permitted by the exception to his appellate waiver. *See generally United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009) (explaining that appeal waivers cannot preclude a defendant from challenging "a sentence that is unlawful because it exceeds the statutory maximum").

Even if Little's appeal were not permitted by the "above statutory maximum" reservation, the remaining terms of the plea agreement would not bar him from challenging the district court's imprisonment-plus-probation sentence. When evaluating the terms of an appeal

waiver, this Court requires precision: "we will not bar the door to a criminal defendant's appeal if his waiver only arguably or ambiguously forecloses his claims." *United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016). If an appeal waiver "does not unambiguously preclude [the defendant] from appealing the issues he presents [on appeal], he has not knowingly, intelligently, and voluntarily waived them." *Id.*

Here, the plea agreement does not unambiguously prohibit a challenge to an imprisonment-plus-probation sentence. That is so because the plea agreement failed to advise Little that such a sentence was even a possibility. Instead, the agreement informed Little that the offense carried "a maximum sentence of six (6) months of imprisonment" and did not mention the possibility of any post-confinement monitoring through probation or supervised release. JA 19. During the period in which Little was considering the plea offer—he received the offer in August 2021 (JA 19) and accepted it in November 2021 (JA 33)—the government acknowledged in related litigation that it had not sought a term of imprisonment plus probation in any petty offense case. *See* Transcript of Sentencing, at 38-39, *United States v. Griffith*, 1:21-cr-204-4 (October 28, 2021) (Howell, C.J.). Likewise, at

Little's plea hearing, the district court reiterated the statutory maximum of six months in prison, but did not mention the possibility of a sentence that included imprisonment followed by post-confinement supervision. JA 38-39. In short, because Little had zero notice that an imprisonment-plus-probation sentence was possible, he could not have knowingly and intelligently waived his right to challenge the imposition of such a sentence. *See Hunt*, 843 F.3d at 1027. For this additional reason, the Court should conclude that Little's challenge to the district court's sentence is not barred by his plea agreement.

## Conclusion

The district court's dual sentence—imprisonment plus probation—is illegal in a case, like this one, that involves only a single conviction for a petty offense. Because Little has already served his entire term of imprisonment, the proper remedy is to reverse and remand with instructions that Little be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term.[3]

---

[3] *See* www.bop.gov/inmateloc (reflecting release date of July 8, 2022).

Respectfully submitted,

/s/ Joshua B. Carpenter
Joshua B. Carpenter
FEDERAL PUBLIC DEFENDER FOR
  THE WESTERN DISTRICT OF NORTH CAROLINA
1 Page Avenue, Suite 210
Asheville, North Carolina  28801
(828) 232-9992

*Counsel for Appellant*

# **Certificate of Compliance**

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*7,600*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief document complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Century Schoolbook*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: July 28, 2022                    /s/ Joshua B. Carpenter
                                        *Counsel for Appellant*

## Certificate of Filing and Service

I hereby certify that on this 28th day of July, 2022, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

James Pearce
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
    Room 1250
Washington, DC  20530
(202) 532-4991

*Counsel for Appellee*

Chrisellen R. Kolb
OFFICE OF THE U.S. ATTORNEY
601 D Street, NW Room 8104
Washington, DC  20530
(202) 252-6829

*Counsel for Appellee*

I further certify that I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above addresses.

/s/ Joshua B. Carpenter
*Counsel for Appellant*

# **<u>Addendum</u>**

## __Table of Contents__

### __Addendum Page__

18 U.S.C. § 3551 ................................................................... Add.1

18 U.S.C. § 3561 ................................................................... Add.2

18 U.S.C. § 3565 ................................................................... Add.3

18 U.S.C. § 3583 ................................................................... Add.4

# Addendum

## 18 U.S.C. § 3551. Authorized sentences

(a) In general.--Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute, including sections 13 and 1153 of this title, other than an Act of Congress applicable exclusively in the District of Columbia or the Uniform Code of Military Justice, shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

(b) Individuals.--An individual found guilty of an offense shall be sentenced, in accordance with the provisions of section 3553, to--

    (1) a term of probation as authorized by subchapter B;
    (2) a fine as authorized by subchapter C; or
    (3) a term of imprisonment as authorized by subchapter D.

    A sentence to pay a fine may be imposed in addition to any other sentence. A sanction authorized by section 3554, 3555, or 3556 may be imposed in addition to the sentence required by this subsection.

(c) Organizations.--An organization found guilty of an offense shall be sentenced, in accordance with the provisions of section 3553, to--

    (1) a term of probation as authorized by subchapter B; or

    (2) a fine as authorized by subchapter C.

    A sentence to pay a fine may be imposed in addition to a sentence to probation. A sanction authorized by section 3554, 3555, or 3556 may be imposed in addition to the sentence required by this subsection.

## 18 U.S.C. § 3561. Sentence of probation

(a)   In general.--A defendant who has been found guilty of an offense may be sentenced to a term of probation unless--

(1) the offense is a Class A or Class B felony and the defendant is an individual;

(2) the offense is an offense for which probation has been expressly precluded; or

(3) the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense.

(b)    Domestic violence offenders.--A defendant who has been convicted for the first time of a domestic violence crime shall be sentenced to a term of probation if not sentenced to a term of imprisonment. The term "domestic violence crime" means a crime of violence for which the defendant may be prosecuted in a court of the United States in which the victim or intended victim is the spouse, former spouse, intimate partner, former intimate partner, child, or former child of the defendant, or any other relative of the defendant.

(c) Authorized terms.--The authorized terms of probation are--

(1) for a felony, not less than one nor more than five years;

(2) for a misdemeanor, not more than five years; and

(3) for an infraction, not more than one year.

Add.2

## 18 U.S.C. § 3565. Revocation of probation

(a) Continuation or revocation.--If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable--

> (1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or

> (2) revoke the sentence of probation and resentence the defendant under subchapter A.

(b) Mandatory revocation for possession of controlled substance or firearm or refusal to comply with drug testing.--If the defendant--

> (1) possesses a controlled substance in violation of the condition set forth in section 3563(a)(3);

> (2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of probation prohibiting the defendant from possessing a firearm;

> (3) refuses to comply with drug testing, thereby violating the condition imposed by section 3563(a)(4); or

> (4) as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year;

> the court shall revoke the sentence of probation and resentence the defendant under subchapter A to a sentence that includes a term of imprisonment.

(c) Delayed revocation.--The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period reasonably necessary for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

## 18 U.S.C. § 3583. Inclusion of a term of supervised release after imprisonment

(a) In general.--The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute or if the defendant has been convicted for the first time of a domestic violence crime as defined in section 3561(b).

(b) Authorized terms of supervised release.--Except as otherwise provided, the authorized terms of supervised release are--

    (1) for a Class A or Class B felony, not more than five years;
    (2) for a Class C or Class D felony, not more than three years; and
    (3) for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year.

(c) Factors to be considered in including a term of supervised release.-- The court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

(d) Conditions of supervised release.--The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision, that the defendant make restitution in accordance with sections 3663 and 3663A, or any other statute authorizing a sentence of restitution, and that the defendant not unlawfully possess a controlled substance. The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4). The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after

consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition-

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the

person, and by any probation officer in the lawful discharge of the officer's supervision functions.

(e) Modification of conditions or revocation.--The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--

> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;
>
> (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;
>
> (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case; or

(4) order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an order under this paragraph may be imposed only as an alternative to incarceration.

(f) Written statement of conditions.--The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

(g) Mandatory revocation for possession of controlled substance or firearm or for refusal to comply with drug testing.--If the defendant--

(1) possesses a controlled substance in violation of the condition set forth in subsection (d);
(2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm;
(3) refuses to comply with drug testing imposed as a condition of supervised release; or
(4) as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year;

the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

(h) Supervised release following revocation.--When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of

supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

(i) Delayed revocation.--The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

(j) Supervised release terms for terrorism predicates.--Notwithstanding subsection (b), the authorized term of supervised release for any offense listed in section 2332b(g)(5)(B) is any term of years or life.

(k) Notwithstanding subsection (b), the authorized term of supervised release for any offense under section 1201 involving a minor victim, and for any offense under section 1591, 1594(c), 2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425, is any term of years not less than 5, or life. If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.