ORAL ARGUMENT NOT YET SCHEDULED

No. 22-3018

---

# In the United States Court of Appeals for the District of Columbia Circuit

——————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

JAMES LITTLE,

*Defendant-Appellee*

——————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
D. CT. NO. 1:21-CR-315 (LAMBERTH, J.)

——————————

APPELLEE'S BRIEF FOR THE UNITED STATES

——————————

MATTHEW M. GRAVES
  United States Attorney
  District of Columbia

JOHN CRABB JR.
  Chief, Capitol Siege Section
  District of Columbia

KENNETH A. POLITE
  Assistant Attorney General

LISA H. MILLER
  Deputy Assistant Attorney
  General

JAMES I. PEARCE
  Appellate Counsel, Capitol
  Siege Section
  Criminal Division
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
  Washington, DC 20530
  (202) 532-4991
  James.Pearce@usdoj.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), the undersigned certifies as follows:

## A.    Parties and Amici

The parties that appeared in the district court and that are now before this Court are the United States (appellee) and James Little (defendant-appellant).  There are no amici curiae or intervenors.

## B.    Rulings Under Review

Little seeks review of the order of the district court (Lamberth, J.) that Little serve a term of imprisonment followed by a term of probation for a petty-offense conviction, App.129-44, and the judgment imposing such a sentence, App.234-40.

## C.    Related Cases

This case has not previously been before this Court or any other court.  Other defendants convicted in the United States District Court for the District of Columbia for a petty offense in connection with the attack on the United States Capitol on January 6, 2021, have raised "substantially the same or similar issues," *see* D.C. Cir. R. 28(a)(1)(C), in the district court.  Although the defendant-appellant has not yet filed his

opening brief, the issue in *United States v. Jeramiah Caplinger*, No. 22-3057 (D.C. Cir. docketed Aug. 19, 2022), may raise "substantially the same or similar issue."

<div style="margin-left:40%">

s/ James I. Pearce

JAMES I. PEARCE
   Appellate Counsel,
   Capitol Siege Section
   Criminal Division
   U.S. Department of Justice

</div>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................iv

GLOSSARY OF ABBREVIATIONS........................................................ix

JURISDICTIONAL STATEMENT.......................................................... 1

STATEMENT OF THE ISSUE................................................................. 1

STATEMENT OF STATUTES AND REGULATIONS........................... 1

STATEMENT OF THE CASE................................................................. 1

    A.    Statement of facts......................................................... 2

    B.    Procedural history and statutory background.............. 5

SUMMARY OF ARGUMENT.................................................................. 15

ARGUMENT.......................................................................................... 17

    The district court lawfully imposed a term of imprisonment
    and a term of probation for Little's petty-offense conviction........ 17

    A.    Section 3561(a)(3)'s text and structure confirm
        that the district court's split sentence was lawful...... 18

    B.    The district court's interpretation does not create
        unnecessary conflict with other statutory
        provisions. ................................................................. 26

    C.    The district court's interpretation does not create
        anomalies in the penalty structure or otherwise........ 33

    D.    The rule of lenity does not apply. ............................... 39

    E.    Any error was harmless.............................................. 40

CONCLUSION........................................................................................ 42

# TABLE OF AUTHORITIES

## Cases

*Barber v. Thomas*,
  560 U.S. 474 (2010) ................................................................ 40

*Barnhart v. Thomas*,
  540 U.S. 20 (2003) ................................................................ 24

*Blanton v. North Las Vegas*,
  489 U.S. 538 (1989) ................................................................ 39

*Currier v. Virginia*,
  138 S. Ct. 2144 (2018) ................................................................ 25

*Foster v. Wainwright*,
  820 F. Supp. 2d 36 (D.D.C. 2011) ........................................ 6

*Johnson v. United States*,
  529 U.S. 694 (2000) ................................................................8, 38

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019) ................................................................ 40

*Lockhart v. United States*,
  577 U.S. 347 (2016) ................................................................ 24

*Mistretta v. United States*,
  488 U.S. 361 (1989) ................................................................ 6

*Morton v. Mancari*,
  417 U.S. 535 (1974) ................................................................ 28

*Muscarello v. United States*,
  524 U.S. 125 (1998) ................................................................ 40

*Ocasio v. United States*,
  578 U.S. 282 (2016) ................................................................ 40

iv

*Posadas v. Nat'l City Bank of N.Y.*,
   296 U.S. 497 (1936) ............................................................... 29

*Trump v. Thompson*,
   20 F.4th 10 (D.C. Cir. 2021) ................................................. 3

*United States v. Anderson*,
   787 F. Supp. 537 (D. Md. 1992) ........................................8, 19

*United States v. Caplinger*,
   No. 21-cr-342, 2022 WL 2045373
   (D.D.C. June 7, 2022) ............................................ 9, 14, 20, 25, 32, 40

*United States v. Cohen*,
   617 F.2d 56 (4th Cir. 1980) ................................................. 18

*United States v. Davis*,
   530 F.3d 318 (5th Cir. 2008) ............................................... 17

*United States v. Entrekin*,
   675 F.2d 759 (5th Cir. 1982) ............................................... 18

*United States v. Forbes*,
   172 F.3d 675 (9th Cir. 1999) ............................................... 19

*United States v. Harris*,
   611 F. App'x 480 (9th Cir. 2015) ......................................... 19

*United States v. Jones*,
   667 F.3d 477 (4th Cir. 2012) ............................................... 17

*United States v. Jourdain*,
   26 F.3d 127 (Tbl.), 1994 WL 209914 (8th Cir. May 20, 1994).......... 31

*United States v. Martin*,
   363 F.3d 25 (1st Cir. 2004) ................................................. 19

*United States v. Nachtigal*,
   507 U.S. 1 (1993) ............................................................... 39

*United States v. Posley*,
    351 F. App'x 807 (4th Cir. 2009) ...................................................20, 41

*United States v. Pritchett*,
    470 F.2d 455 (D.C. Cir. 1972)..................................................... 24

*United States v. Sarko*,
    No. 21-cr-591, 2022 WL 1288435 (D.D.C. Apr. 29, 2022) ...........14, 20

*United States v. Williams*,
    553 U.S. 285 (2008) ................................................................. 37

*United States v. Wyche*,
    741 F.3d 1284 (D.C. Cir. 2014)....................................................... 27

*Wooden v. United States*,
    142 S. Ct. 1063 (2022) ................................................................. 40

*Young v. United States*,
    943 F.3d 460 (D.C. Cir. 2019)..................................................... 40

## Statutes and Constitutional Provisions

U.S. Const. amend. XII..................................................................... 2

U.S. Const. art. II, § 1..................................................................... 2

U.S. Const. art. II, § 1, cl. 3............................................................. 2

1 U.S.C. § 1................................................................................... 31

3 U.S.C. § 15................................................................................. 2

5 U.S.C. § 8412a............................................................................. 25

10 U.S.C. § 1447............................................................................. 25

18 U.S.C. § 19................................................................................5, 34

18 U.S.C. § 1752............................................................................. 5

18 U.S.C. § 3231.................................................................................. 1

18 U.S.C. § 3551....................................................................6, 7, 13, 15

18 U.S.C. § 3559.......................................................................5, 34, 35

18 U.S.C. § 3561................................................ 8, 10, 12, 15, 19, 31, 34

18 U.S.C. § 3563.....................................................................16, 35, 41

18 U.S.C. § 3583.......................................................................8, 31, 34, 35

18 U.S.C. § 3583 (1984)........................................................................ 8

18 U.S.C. § 3624............................................................................... 36

18 U.S.C. § 3651 (1982)...................................................................... 18

18 U.S.C. § 3742.................................................................................. 1

28 U.S.C. § 1291.................................................................................. 1

34 U.S.C. § 12475.............................................................................. 25

40 U.S.C. § 5104...............................................................................2, 5

40 U.S.C. § 5109.................................................................................. 5

Sentencing Reform Act of 1984,
    Pub. L. No. 98-473, 98 Stat 1837 ........................................6, 8, 23, 27

Sentencing Act of 1987,
    Pub. L. No. 100-182, 101 Stat. 1266..................................................... 9

Violent Crime Control and Law Enforcement Act of 1994,
    Pub. L. No. 103-322, 108 Stat. 1796.................................................. 30

**Other Authorities**

12A Cyclopedia of Federal Procedure (3d ed. 2022).............................. 20

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012)........21, 23, 25, 28, 29, 36, 37, 38

H.R. Rep. No. 102-405 (1991)....................................................... 9

H.R. Rep. No. 103-711 (1994)....................................................... 9

S. Rep. No. 98-225 (1983)................................... 7, 8, 18, 22, 26, 32, 41, 42

**Rules and Sentencing Guidelines**

D.C. Cir. R. 28......................................................................... i

Fed. R. Evid. 804 (2010).......................................................... 25

U.S.S.G. § 5B1.1 ..................................................................... 18

U.S.S.G. § 5G1.2 .................................................................... 36

# GLOSSARY OF ABBREVIATIONS

App.        Appellant's Appendix

Br.         Appellant's opening brief

## JURISDICTIONAL STATEMENT

Defendant-appellee James Little appeals from a judgment of conviction in a criminal case.  The district court (Lamberth, J.) had jurisdiction under 18 U.S.C. § 3231.  The judgment was entered on March 17, 2022, App.226-32, and Little filed a timely notice of appeal on March 21, 2022, App.233.[1]  This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUE

Whether the district court permissibly sentenced the defendant, convicted of willfully demonstrating in the U.S. Capitol building, to a term of imprisonment followed by a term of probation.

## STATEMENT OF STATUTES AND REGULATIONS

Pertinent statutes and regulations are produced in an addendum to Little's brief.

## STATEMENT OF THE CASE

Little was charged by information with four offenses in connection with his participation in the attack on the United States Capitol on

---

[1] The district court entered an amended judgment on March 24, 2022. App.234-40.  The issue on appeal does not implicate any difference between the two judgments.

January 6, 2021.  He pleaded guilty under a plea agreement to one count of knowingly and willfully parading, demonstrating, and picketing in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).  Little was sentenced to 60 days in prison, followed by three years of probation.

### A.    Statement of facts

Under the Constitution, every four years, state-appointed "Electors," equal to the number of Senators and Representatives for that state, "vote by ballot" for the President and the Vice President of the United States.  U.S. Const. art. II, § 1.  After voting in their respective states, the Electors sign, seal, and transmit their votes to the President of the Senate.  *Id.* cl. 3; U.S. Const. amend. XII.  Thereafter "[t]he President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted[; t]he Person having the greatest Number of Votes shall be the President." U.S. Const. art. II, § 1, cl. 3.  Under the Electoral Count Act of 1887, that certification proceeding takes place "on the sixth day of January" following a presidential election at "1 o'clock in the afternoon." 3 U.S.C. § 15.

As Congress was undertaking its constitutional and statutory obligation to certify the Electoral College vote on January 6, 2021, a mob of rioters forced past police officers and into the United States Capitol building, causing Members of Congress and the Vice President to flee and stopping the certification, which was underway. App.30. The rioters threatened and assaulted officers, vandalized property, and flooded throughout the building. App.31. The mob's violence "left multiple people dead, injured more than 140 people, and inflicted millions of dollars in damage to the Capitol." *Trump v. Thompson*, 20 F.4th 10, 15 (D.C. Cir. 2021). The mob's violent breach also forced the certification proceeding to stop, triggered a lockdown, and prevented Congress from resuming for nearly six hours as police officers cleared the rioters from the Capitol. App.31.

Little was part of that mob. In late November 2020, Little uploaded to YouTube an approximately 23-minute-long video in which he talked of a coming civil war if the Supreme Court failed to support then President Trump. App.54. On January 5, he traveled from North Carolina to attend the "Stop the Steal" rally planned for the following day. App.54. After attending that rally at the Ellipse, Little walked toward the

Capitol, where he saw police officers deploying tear gas and, according to him, firing rubber bullets into the crowd. App.55. Seeing other rioters climbing scaffolding erected for the presidential inauguration scheduled two weeks after January 6, Little entered the Capitol through a door under the scaffolding. App.55. Once inside, he excitedly fist-bumped other rioters and made his way to the Senate Gallery, from which lawmakers had evacuated not long before. App.56, 60.

Little also recorded his presence inside the Capitol and boasted about it. At 3:20 p.m., Little texted a friend the message: "We just took over the Capital [sic]." App.246. The friend responded in disbelief that Little was bragging about participating in a "coup" that was tantamount to "treason." App.12 (capitalization altered). Little wrote back: "We are stopping treason! Stealing elections is treason! We're not going to take it anymore!" App.246. Little further told his friend that the friend would "thank" Little later for "saving your freedom." App.12. After leaving the building, Little sat on Capitol steps and sang a song entitled "We're Not Gonna Take [I]t" with other rioters. App.57.

A week later, Little was interviewed by federal agents. App.57. During that interview, Little blamed police officers for antagonizing the

crowd and blamed members of Antifa and Black Lives Matter for inciting supporters of the former President to violence. App.57. He predicted that a civil war would occur because the former President had won the popular vote. App.57.

### B. Procedural history and statutory background

1. In April 2021, the government filed an information charging Little with one count of entering and remaining in a restricted area, in violation of 18 U.S.C. § 1752(a)(1); one count of disorderly and disruptive conduct in a restricted area, in violation of 18 U.S.C. § 1752(a)(2); one count of disorderly and disruptive conduct in the Capitol building, in violation 40 U.S.C. § 5104(e)(2)(D); and one count of parading, demonstrating, and picketing in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). App.16-17. In November 2021, Little signed a plea agreement and pleaded guilty to one count of violating Section 5104(e)(2)(G) (parading, demonstrating, and picketing in the Capitol building). App.19-33. That crime carries a six-month statutory maximum penalty, 40 U.S.C. § 5109(b), and thus qualifies as a Class B misdemeanor, 18 U.S.C. § 3559(a)(7), and a "petty offense," 18 U.S.C. § 19.

5

2. The case proceeded to sentencing. The government advocated a "split sentence"—"a period of incarceration followed by a period of probation," *Foster v. Wainwright*, 820 F. Supp. 2d 36, 37 n.2 (D.D.C. 2011) (internal quotation marks omitted)—of one month in prison followed by 36 months' probation. App.52.

a. In 1984, Congress enacted the Sentencing Reform Act, which in substantial part remains the sentencing regime that exists today. *See* Pub. L. No. 98-473, §§ 211-212, 98 Stat 1837, 1987, *codified at* 18 U.S.C. § 3551 *et seq.*; *see Mistretta v. United States*, 488 U.S. 361, 365-66 (1989) (noting that the Sentencing Reform Act of 1984 wrought "sweeping reforms" to federal criminal sentencing). That legislation falls in Chapter 227 of Title 18, which covers "Sentences." Chapter 227, in turn, consists of subchapter A ("General Provisions"), subchapter B ("Probation"), subchapter C ("Fines"), and subchapter D ("Imprisonment"). Three provisions—one from subchapter A, one from subchapter B, and one from subchapter D—are relevant to the question of whether a sentencing court may impose a split sentence for a defendant convicted of a single petty offense.

In subchapter A, 18 U.S.C. § 3551 sets out "[a]uthorized sentences." Section 3551(a) makes clear that a "defendant who has been found guilty of" any federal offense "shall be sentenced in accordance with the provisions of" Chapter 227 "[e]xcept as otherwise specifically provided." 18 U.S.C. § 3551(a).  Section 3551(b) provides that a federal defendant shall be sentenced to "(1) a term of probation as authorized by subchapter B; (2) a fine as authorized by subchapter C; or (3) a term of imprisonment as authorized by subchapter D."  18 U.S.C. § 3551(b).[2]

Congress in Section 3551 accomplished two principal goals.  First, it ensured that probation would be treated as a "type of sentence" rather than as an "alternative" sentencing disposition that might involve parole or a suspended sentence as was the case under then-existing law.  *See* S. Rep. No. 98-225, at 68, 88 (1983).  Second, Congress provided a menu of sentencing options to ensure that district courts had "considerable flexibility in the formulation of an appropriate sentence for each particular case."  *Id.* at 69.  From that menu—which included probation,

---

[2] Section 3551(b) further provides that a sentencing judge may impose a fine "in addition to any other sentence."  18 U.S.C. § 3551(b).

a fine, and imprisonment, § 3551(b)—a sentencing court was required to impose "[a]t least one of such sentences." *Id.* at 68.

In subchapter B, the first provision, 18 U.S.C. § 3561, addresses a "[s]entence of probation." As initially enacted in 1984, Section 3561 provided that a federal defendant may be sentenced to a term of probation "unless . . . (1) the offense is a Class A or Class B felony; (2) the offense is an offense for which probation has been expressly precluded; or (3) the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense." Pub. L. No. 98-473, § 212, 98 Stat. 1992; *see United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992) (noting that the Sentencing Reform Act did not permit "a period of 'straight' imprisonment . . . at the same time as a sentence of probation").

In subchapter D, in 18 U.S.C. § 3583, Congress enacted a system of supervised release that allows for "postconfinement monitoring overseen by the sentencing court." *Johnson v. United States*, 529 U.S. 694, 697 (2000). As initially enacted in 1984, Section 3583 permitted sentencing courts to impose a term of supervised release following any felony or misdemeanor conviction, including for petty offenses. *See* 18 U.S.C. § 3583(b)(3) (1984) ("The authorized terms of supervised release are . . .

8

for a Class E felony, or for a misdemeanor, not more than one year."). But three years later, the Sentencing Act of 1987 amended Section 3583(b)(3) by inserting the parenthetical qualifier "(other than a petty offense)" after the word misdemeanor. *See* Pub. L. No. 100-182, § 8, 101 Stat. 1266, 1267. With supervised release unavailable for defendants convicted of a petty offense, the 1987 legislation "left a gap in the law" because such a defendant could also not receive a term of probation following a sentence of imprisonment under Section 3561(a)(3). *See United States v. Caplinger*, No. 21-cr-342, 2022 WL 2045373, at *7 (D.D.C. June 7, 2022).

In 1994, Congress amended Section 3561(a)(3). In 1991, Congress considered adding the following sentence to the end of Section 3561(a)(3): "However, this paragraph does not preclude the imposition of a sentence to a term of probation for a petty offense if the defendant has been sentenced to a term of imprisonment at the same time for another such offense." H.R. Rep. No. 102-405, at 167 (1991). Instead of adopting that language, three years later Congress revised Section 3561(a)(3) by appending the phrase "that is not a petty offense" (the "petty-offense clause") to the end of the then-existing language. *See* H.R. Rep. No. 103-711, at 312 (1994). In its current form, therefore, Section 3561(a)(3)

provides that a defendant "may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." 18 U.S.C. § 3561(a)(3).

b. In a written opinion, the district court concluded that Section 3561(a)(3) authorized imposition of a split sentence of imprisonment and probation on a defendant convicted of a single petty offense. App.129-44. The district court reasoned that "[o]nly a split sentence would adequately serve the goals of sentencing" in Little's case because such a sentence would "punish Little for his conduct" while also ensuring that Little would not participate in "another riot." App.132-33. It accordingly imposed a sentence of 60 days in prison followed by three years of probation. App.129, 235-36.

The district court noted that Section 3561 "begins with a grant of authority"—permitting a court to impose probation—followed by a limitation in the words following "unless." App.136. The relevant limitation does not permit probation for a defendant "sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." App.136 (quoting 18 U.S.C. § 3561(a)(3)). By

its terms, the district court reasoned, the limitation on a sentencing court's authority to impose probation "does not extend" to a defendant sentenced to a petty offense. *See* App.136 ("[W]hile a defendant's sentence of a term of imprisonment *may* affect a court's ability to impose probation, the petty-offense clause limits this exception.").

The district court acknowledged "two possible ways" to construe the petty-offense clause's relationship to the preceding language in Section 3561(a)(3). App.136. While the clause clearly modifies the word "offense," the interpretive question was whether the "offense" in question referred only to "a different offense"—a reading suggested by applying the last-antecedent canon—or instead encompassed the phrase "the same or a different offense." App.136-37. In the district court's view, if the word "same" functions as a pronoun, then the petty-offense clause would not modify it because "a limiting clause will not ordinarily extend to another, earlier noun." App.136. But if "same" is instead an adjective, the petty-offense clause would modify the entire phrase "the same or a different offense" because the "adjectival phrase 'the same or a different' identifies which 'offense' is at issue." App.137.

Surveying Section 3561(a)(3)'s text and context as well as the

common usage of the term "same" in other relevant formulations, the district court concluded that "same" functioned as an adjective in Section 3561(a)(3). *See* App.137-41. Section 3561(a)(3) "lacks 'unexpected internal modifiers or structure'" or any comma or other punctuation that might suggest that "same" functions as a pronoun. App.137. Moreover, the district court reasoned, "same" is not used as a pronoun in Section 3561(a)'s other two subsections (which instead use "the offense"), *see* § 3561(a)(1)-(2), and "same" is used as an adjective elsewhere in Section 3561(a)(3), *see* § 3561(a)(3) (referring to the defendant being "sentenced at the same time"), giving rise to the presumption that "identical words used in different parts of the same act are intended to have the same meaning." App.137-38 (internal quotation marks omitted). And when used by Congress, in the Rules of Evidence, or Supreme Court opinions, the phrase "the same or different" regularly involves the "same" functioning as an adjective. *See* App.138-39. It followed that the petty offense clause modified the entire phrase "the same or a different offense." App.140.

In reaching that conclusion, the district court reasoned that Section 3561(a)(3) serves as an exception to the "default rule" in Section 3551(b)

that "imprisonment and probation are mutually exclusive." App.141. First, Section 3551(a)'s language that sentencing rules in Section 3551(b) apply "except as otherwise specifically provided" envisioned an exception such as that provided in the petty-offense clause in Section 3561(a)(3). App.142. Second, in light of the statutory canon that "the specific governs the general," the more specific language in the petty-offense clause provides a "narrow exception" to the general prohibition in Section 3551(b). App.142 (internal quotation marks omitted). Third, such an interpretation permits a form of "postconfinement monitoring" that is otherwise unavailable in petty-offense cases where supervised release is not permitted. App.142-43 (internal quotation marks omitted). Finally, a "contrary interpretation" that required a sentencing court to choose between imprisonment and probation would result in surplusage because it would fail to give the petty-offense clause meaning. App.143.[3]

3.    Following the district court's decision, other judges in cases arising out of the January 6 attack have reached the same conclusion. In

_____

[3] In a footnote, the district court explained that although "not raised by Little," the rule of lenity did not apply because statutory text and context "entirely" "resolved" the interpretive question. App.143 n.3.

*Caplinger*, 2022 WL 2045373, Judge Friedman found, after analyzing Section 3561(a)(3)'s text, structure, and legislative history, that the "federal sentencing statutes" allow imposition of "both a custodial sentence and a sentence of probation for a violation of" Section 5104, the same statute under which Little was convicted. *See id.* at *8. Judge Kollar-Kotelly reached the same conclusion in *United States v. Sarko*, No. 21-cr-591, 2022 WL 1288435, at *1-*3 (D.D.C. Apr. 29, 2022), and thus disagreed with her earlier ruling in *United States v. Spencer*, No. 21-cr-147, ECF No. 70 (D.D.C. Jan. 19, 2022), where she had reached a contrary conclusion, *id.* at 5; *see also Sarko*, 2022 WL 1288435, at *1 n.2 (noting prior ruling in *Spencer*). Additionally, other judges have imposed split sentences in Capitol siege cases. *See, e.g.*, *United States v. Getsinger*, No. 21-cr-607, ECF No. 62 (D.D.C. Aug. 2, 2022) (Sullivan, J.) (imposing split sentence for single petty-offense conviction); *United States v. Revlett*, No. 21-cr-281, ECF No. 46 (D.D.C. July 7, 2022) (Boasberg, J.) (same); *United States v. Entrekin*, No. 21-cr-686, ECF No. 34 (D.D.C. May 6, 2022) (Pan, J.) (same); *United States v. Meteer*, No. 21-cr-630, ECF No. 37 (D.D.C. April 22, 2022) (Nichols, J.) (same); *United States v. Smith*, No. 21-cr-290, ECF No. 44 (D.D.C. Mar. 24, 2022)

(Walton, J.) (same).

## SUMMARY OF ARGUMENT

The district court lawfully imposed a "split sentence"—a sentence that includes a term of imprisonment and a term of probation—for a single petty-offense conviction. A sentencing court must impose a sentence of probation, a fine, or imprisonment. *See* 18 U.S.C. § 3551(b). The Sentencing Reform Act abolished split sentences of imprisonment and probation for all offenses until 1994. But following a 1994 amendment, Section 3561's language—providing that a defendant may be sentenced to probation unless he "is sentenced at the same time to a term of imprisonment for the same or a different offense *that is not a petty offense*," 18 U.S.C. § 3561(a)(3) (emphasis added to the petty-offense clause added in the 1994 amendment)—articulated a different rule for a defendant, such as Little, convicted of a petty offense. Common sense, tools of statutory construction, and statutory history all indicate that the petty-offense clause modifies the entire phrase "the same or a different offense." It follows that a defendant sentenced to imprisonment for a petty offense may be sentenced to probation for the "same" petty offense.

15

That interpretation neither creates conflict with other statutory provisions nor gives rise to absurdities. Section 3551(b) provides a menu of options, not an either-or choice, so it does not conflict with Section 3561(a)(3). But if the two provisions did conflict, the petty-offense clause carves out a narrow exception to Section 3551(b)'s default rule prohibiting the simultaneous imposition of imprisonment and probation, an exception that Little acknowledges exists for a defendant who receives a split sentence following conviction for a petty offense and some other offense. Interpreting Section 3561(a)(3) to permit a split sentence does not nullify the prohibition in 18 U.S.C. § 3583(b)(3) against supervised release in a petty-offense case, as Little's sentencing disposition makes clear. Moreover, a split sentence for a petty-offense defendant does not create sentencing anomalies or enable an endless cycle of imprisonment and probation, neither of which arose in the over 25 years that split sentences were generally available.

Finally, even if the district court erred, any error would be harmless. Under 18 U.S.C. § 3563(b)(10), a sentencing court can impose up to a year—or the statutory maximum term, which is six months in Little's case—in prison as a condition of probation to be served during the

16

first year of probation.  The district court could have imposed functionally

the same sentence—60 days in prison followed by a three-year term of

probation—under Section 3563(b)(10).

## ARGUMENT

**The district court lawfully imposed a term of imprisonment and a term of probation for Little's petty-offense conviction.**

The district court correctly concluded that Section 3561(a)(3)

permits a sentencing court to impose a split sentence—imprisonment

followed by probation—on a defendant convicted of a single petty offense.

That conclusion follows from the relevant text, context, and history, and

neither creates a conflict with other statutory provisions nor gives rises

to absurd results.  Any error, however, would be harmless because the

district court possessed the authority to impose functionally the same

sentence under a different sentencing provision.[4]

---

[4] The government has opted not to enforce the appellate waiver in this case.  This Court therefore need not address Little's argument (Br.38-40) that the plea agreement permits his sentencing challenge notwithstanding that waiver.  *See United States v. Jones*, 667 F.3d 477, 486 (4th Cir. 2012) (court will not enforce an appellate waiver *sua sponte* where the government elects not to enforce it); *see also United States v. Davis*, 530 F.3d 318, 320-21 (5th Cir. 2008) (per curiam) (explaining that the government's "determinations are necessarily case-specific" when "it chooses to not enforce appellate-waiver provisions").

A.    **Section 3561(a)(3)'s text and structure confirm that the district court's split sentence was lawful.**

Before Congress passed the Sentencing Reform Act of 1984, sentencing courts could suspend the execution of all or part of a term of imprisonment and put the defendant on probation.  *See* 18 U.S.C. § 3651 (1982); *United States v. Cohen*, 617 F.2d 56, 59 (4th Cir. 1980) (per curiam) (noting that Section 3651 had as its "primary purpose . . . to enable a judge to impose a short sentence, not exceeding six months, followed by probation on a one count indictment"); *see also United States v. Entrekin*, 675 F.2d 759, 760-61 (5th Cir. 1982) (per curiam) (affirming a split sentence of six months' incarceration followed by three years of probation).  In passing the Sentencing Reform Act, Congress sought generally to abolish the practice of splitting a sentence between imprisonment and probation because "[t]he same result" could be accomplished through a "more direct and logically consistent route," namely the use of supervised release as set out in 18 U.S.C. §§ 3581 and 3583.   S. Rep. No. 98-225, at 89 (1983); *accord* U.S.S.G. § 5B1.1, Background.  But ten years later, Congress reconsidered.  Congress's 1994 amendment to Section 3561(a)(3) reinstated a sentencing court's authority to impose a split sentence for a petty offense.

18

Under 18 U.S.C. § 3561, a defendant "may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." 18 U.S.C. § 3561(a)(3). Thus, for any federal offense *other than* a petty offense, Section 3561(a)(3) prohibits "imposition of both probation and straight imprisonment," consistent with the general rule in Section 3551(b). *United States v. Forbes*, 172 F.3d 675, 676 (9th Cir. 1999); *see United States v. Martin*, 363 F.3d 25, 34-35 (1st Cir. 2004); *United States v. Harris*, 611 F. App'x 480, 481 (9th Cir. 2015) (unpublished); *United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992). But the statutory text of 18 U.S.C. § 3561(a)(3) goes further by permitting a court to sentence a defendant to a term of probation "unless" that defendant "is sentenced at the same time to a term of imprisonment for the same or a different offense *that is not a petty offense*." 18 U.S.C. § 3561(a)(3) (emphasis added). Section 3561 "begins with a grant of authority"—permitting a court to impose probation—followed by a limitation in the words following "unless." App.136. That limitation, however, "does not extend" to a defendant sentenced to a petty offense. *See id.*

It follows that when a defendant *is* sentenced for a petty offense, that defendant may be sentenced to a period of continuous imprisonment and a term of probation. *See United States v. Posley*, 351 F. App'x 807, 809 (4th Cir. 2009) (per curiam) (unpublished). In *Posley*, the defendant, convicted of a petty offense, was sentenced to two years of probation with the first six months in prison. *Id.* at 808. In affirming that sentence, the Fourth Circuit concluded that Section 3561(a)(3) "[u]nquestionably" provided statutory authority to sentence the petty-offense defendant to "a term of six months of continuous imprisonment plus probation." *Id.* at 809; *see* 12A Cyclopedia of Federal Procedure, § 50:203 (3d ed. 2022) ("[W]here the defendant is being sentenced for a petty offense, a trial court may properly sentence such individual to a term of continuous imprisonment for a period of time, as well as a sentence of probation.") (citing *Posley*); *See United States v. Caplinger*, No. 21-cr-342, 2022 WL 2045373, at *7 (D.D.C. June 7, 2022); *United States v. Sarko*, No. 21-cr-591, 2022 WL 1288435, at *1-*3 (D.D.C. Apr. 29, 2022).

Little acknowledges that Section 3561(a)(3) permits a sentencing court to impose a split sentence but contends (Br.28-29) that that statutory provision permits a split sentence only where a defendant is

sentenced to multiple offenses and at least one is a petty offense.  To be sure, the parties here agree that a sentencing court has authority to impose a split sentence where a defendant is sentenced to imprisonment for a petty offense and probation for any other—that is, a "different"— offense.  But Little identifies no persuasive textual or practical reason to cabin a sentencing court's authority to only that situation.

The district court thus correctly concluded that the petty-offense clause modifies the entire phrase "the same or a different offense." App.135-39.  Section 3561(a)(3) does not state "the same *offense*, or a different offense that is not a petty offense," which could imply that the petty-offense clause applies only to "different offense."  Instead, the petty-offense clause serves as a postpositive modifier best read to apply to the entire, integrated phrase "the same or a different offense."  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 148 (2012).  Where, as in Section 3561(a)(3), a statute includes a "straightforward, parallel construction" that involves a pair of terms, the series-qualifier canon dictates that the modifier—whether it precedes or follows those terms—applies to both of those terms.  *See id.* at 147.  That conclusion is even more compelling here where the

postpositive modifier (*i.e.*, the petty-offense clause) applies to a single term ("offense") that is itself modified by two parallel adjectives ("the same or a different").

Little's efforts to resist that commonsense reading are not persuasive.  First, he contends (Br.17-18) that Congress merely adopted an elliptical construction in Section 3561(a)(3) when it used "the same or a different offense" to "avoid repetition." *Id.* at 17.  But Little's sole source for this interpretation—language from the Sentencing Reform Act's legislation history, *see id.* (citing S. Rep. No. 98-225, at 89)—demonstrates that Congress knew how to draft the precise formulation that Little now asks this Court to read into Section 3561(a)(3).  Second, Little argues (Br.19) that Congress could have replaced the phrase "the same or a different" with "an" or "any" to remove any ambiguity.  Perhaps so, though using "*any* offense that is not a petty offense" could well raise questions about whether that statutory language applies differently for a single petty-offense conviction than for multiple convictions.  In any event, the fact that Congress appended the petty-offense clause to the end of the integrated phrase—"the same or a different offense"—that Congress had enacted through the Sentencing Reform Act of 1984, Pub.

L. No. 98-473, § 212, 98 Stat. 1837, 1992, suggests that the petty-offense clause applies to the entire phrase. So does the fact that Congress in 1991 considered, but ultimately did not enact, language that unequivocally supports the interpretation that Little advocates. *See supra* 9.

Had Congress sought to apply the petty-offense clause solely to "a different offense," the "typical way in which syntax would suggest no carryover modification" would be some language that "cut[s] off the modifying phrase so its backward reach is limited." Scalia & Garner, *supra*, at 148-49. And while the indefinite article "a" might play that role in other contexts (*e.g.*, "either a pastry or cake with icing" vs. "either a pastry or a cake with icing"), the indefinite article in Section 3561(a)(3) merely reflects the fact that the definite article before "same" could not naturally apply to the undefined "different offense." *See* App.137 (observing that the indefinite article "a" is "grammatically necessary" but does not cut off the petty-offense clause's backward reach).

Little nonetheless contends (Br.18-19) that this Court should apply the last-antecedent canon to construe the petty-offense clause to reach only "a different offense." That canon "reflects the basic intuition that

when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it." *Lockhart v. United States*, 577 U.S. 347, 351 (2016); *see Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). The last-antecedent canon is particularly apt "where it takes more than a little mental energy to process the individual entries in the list, making it a heavy lift to carry the modifier across them all." *Lockhart*, 577 U.S. at 351. But those concerns are not present in Section 3561(a)(3), where the interpretive question is whether the petty-offense clause applies not to a "list" or "list of entries" but instead to the single phrase "the same or a different offense." The last-antecedent canon is "not an inflexible rule" and should not be applied where, as here, "context indicates otherwise." *United States v. Pritchett*, 470 F.2d 455, 459 (D.C. Cir. 1972).

The interpretation that results from applying the last-antecedent canon, moreover, makes a hash of the phrase "the same or a different offense" in Section 3561(a)(3). Applied faithfully, the last-antecedent canon would leave behind a sentence that is not only ungrammatical but nonsensical: a defendant is ineligible for probation when he "is sentenced at the same time to a term of imprisonment" for either (1) "the same" or (2) "a different offense that is not a petty offense." In other words, if the

24

petty-offense clause modifies only the phrase "a different offense," then the phrase "the same" stands alone. *Caplinger*, 2022 WL 2045373, at *4 (internal quotation marks omitted). By contrast, interpreting the petty-offense clause to apply to "the same or a different offense" does not require breaking up that integrated phrase.

Construing the petty-offense clause to modify the entire phrase "the same or a different offense" in Section 3561(a)(3) is also consistent with how the phrase "the same or a different" is used in other legal contexts. App.138-40. Congress typically uses the phrase to denote two adjectives modifying the same noun, suggesting the type of "simple construction," Scalia & Garner, *supra*, at 148, to which the series-qualifier canon would apply. *See, e.g.*, 34 U.S.C. § 12475(f)(4) (referring to "the same or a different neighborhood or jurisdiction"); 5 U.S.C. § 8412a(b)(3)(B) (permitting transfer to "another position in the same or a different agency"); 10 U.S.C. § 1447(11)(B) (referring to a "course of study or training in the same or a different school"). The same is true in the Rules of Evidence, *see* Fed. R. Evid. 804(b)(1) (2010) (referring to testimony given in "the same or a different proceeding"), and judicial opinions, *see, e.g.*, *Currier v. Virginia*, 138 S. Ct. 2144, 2155 (2018) (opinion of Gorsuch,

J.) (referring to "the same or a different 'criminal episode'").

## B.    The district court's interpretation does not create unnecessary conflict with other statutory provisions.

Little contends (Br.21-30) that the district court's interpretation creates "needless[]" conflict with Section 3551(b) and Section 3583. Little is incorrect because those provisions do not conflict. In any event, any conflict between either Section 3551(b) or Section 3583 and Section 3561(a)(3) is easily reconciled.

1.    Little's suggestion (Br.28-30) that the district court's interpretation creates a conflict with Section 3551(b) is flawed. As an initial matter, Little misapprehends Section 3551(b) as limiting a sentencing court's options to "probation or imprisonment, but not both." *Id.* at 29. By listing three potential sentences—probation, a fine, and imprisonment—separated by "or," Section 3551(b) supplies sentencing courts with a menu of options, not a restrictive choice between the three. *See* S. Rep. No. 98-225, at 68 (sentencing court required to impose "[a]t least one" among probation, fine, and imprisonment). That understanding of Section 3551(b) is consistent with Congress's objective to ensure that sentencing courts have "considerable flexibility in the formulation of an appropriate sentence for each particular case." *Id.* at

26

69.[5]

Even on Little's view (Br.29) that Section 3551(b) conflicts with Section 3561(a)(3) because Section 3551(b) requires a sentencing court to choose between probation and imprisonment, such a conflict would not undermine the district court's conclusion. Under that theory, congressional action—and not the government's proposed interpretation—would have created the conflict between two provisions in Chapter 227. Namely, Congress indisputably sought to abolish split sentences under the Sentencing Reform Act of 1984, and two provisions relevant to the question of a sentencing court's authority to impose a split sentence spoke in unison in the 1984 legislation: Section 3551(b) required a sentencing court to choose between a fine, imprisonment, and probation, and Section 3561(a)(3) similarly prohibited probation when "the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense." Pub. L. No. 98-473, § 212, 98 Stat. 1992. But as Little acknowledges (Br.28), Congress's 1994 amendment

_____

[5] Although the government did not advance, and the district court did not adopt, this interpretation of Section 3551(b) below, this Court may affirm on any basis supported by the record. *See United States v. Wyche*, 741 F.3d 1284, 1292 (D.C. Cir. 2014).

of Section 3561(a)(3) authorized a sentencing court to impose a sentence that includes both probation and imprisonment, even though (in Little's view) that authorization conflicts with the broad prohibition on split sentences in Section 3551(b).

Resolving that purported conflict requires interpreting the later-enacted narrow carve-out for split sentences in a petty offense case as an exception to the general prohibition on split sentences in federal criminal sentencing. *See* App.141-43. The more specific permission for split sentences in a petty-offense case in Section 3561(a)(3) prevails over the general prohibition on split sentences in Section 3551(b). *See Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one."). As noted above, when Congress enacted the general prohibition on split sentences in Section 3551(b), it had not yet enacted the more specific carveout for split sentences in a petty-offense case in Section 3561(a)(3). That carveout does not "void" a general prohibition on split sentences in Section 3551(b), if that section can be so construed; rather, a general prohibition's "application to cases covered by the specific provision is suspended." Scalia & Garner, *supra*, at 184. In other words,

assuming Section 3551(b) announces a general rule prohibiting split sentences, it "govern[s] all other cases" apart from a case involving a petty offense. *Id.* This interpretation, moreover, "ensures that *all* of Congress's goals set forth in the text are implemented." App.142.

Moreover, to the extent Section 3551(b)'s general terms conflict with Section 3561(a)(3)'s specific permission for a split sentence in a petty-offense case, the latter, later-enacted provision controls. *See Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936) ("Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one."); Scalia & Garner, *supra*, at 327-329. Where a conflict exists "between a general provision and a specific one, whichever was enacted later might be thought to prevail." Scalia & Garner*, supra*, at 185. The "specific provision"—here Section 3561(a)(3)—"does not negate the general one entirely, but only in its application to the situation that the specific provision covers." *Id.* Section 3551(b)'s broad language does not operate against the more specific, later-enacted carveout for split sentences in petty-offense cases in Section 3561(a)(3).

Little concedes (Br.28-29) that a split sentence is permissible when

a defendant is being sentenced on multiple convictions where at least one is for a petty offense. That concession supports reading Section 3551(b) as merely listing sentencing options but leaving to other statutes the task of defining when each option is available. But even if Section 3551(b) is best read as creating mutually exclusive options, Little's concession nonetheless demonstrates that the more specific and later-enacted Section 3561(a)(3) controls, and the district court was free to apply Section 3561(a)(3) to Little's single petty-offense conviction.

Little's invocation (Br.30) of the title of the 1994 legislation amending Section 3561(a)(3) does not aid his argument. That legislation, which added the petty-offense clause to the end of the existing Section 3561(a)(3), was titled "Authorization of Probation for Petty Offenses in Certain Cases." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 280004, 108 Stat. 1796, 2096 (capitalization altered). In Little's view, the title's reference to "certain cases" implies that some subset of petty-offense cases exist in which probation is not permitted. That is true but nonetheless fully compatible with the district court's interpretation. Where a defendant has been sentenced to imprisonment for a non-petty offense, probation is not permitted for the

petty offense (or any other offense).  18 U.S.C. § 3561(a)(3).  But where a defendant has been sentenced to imprisonment for a petty offense, probation *is* permitted for either the "same . . . offense" (*i.e.*, the petty offense itself) or for "a different offense."[6]  *Id.*

2.    Little's contention (Br.22-27) that the district court's interpretation creates a conflict with Section 3583, the statutory provision authorizing supervised release, also lacks merit.  When, in 1984, Congress initially enacted Section 3583, sentencing courts could impose a term of supervised release for a defendant convicted of any misdemeanor, including for a petty offense.  *See supra* 8-9.  In 1987, Congress removed sentencing courts' authority to impose a term of supervised release on defendants convicted of a petty offense.  *See* 18 U.S.C. § 3583(b)(3); *supra* 9; *see also United States v. Jourdain*, 26 F.3d 127 (Tbl.), 1994 WL 209914, at *1 (8th Cir. May 20, 1994) (per curiam) (unpublished) (plain error to impose a term of supervised release for a petty offense).  In 1994, Congress amended Section 3561(a)(3) by adding

---

[6] Similarly unhelpful is Little's reliance (Br.29-30) on the use of the singular "offense" in Section 3551(b) because "words importing the singular include and apply to several persons, parties, or things."  1 U.S.C. § 1.

31

the petty-offense clause. *Supra* 9.

Nothing in Section 3561(a)(3) or in the district court's decision "nullif[ies]" (Br.22) or "repeals by implication" (*id.* at 23) Section 3583(b)(3)'s prohibition on supervised release for defendants convicted of a petty offense. Most basically, the district court's interpretation of Section 3561(a)(3) leaves Section 3583(b)(3)'s prohibition on supervised release in a petty-offense case entirely intact, and Little's own sentence involved no impermissible term of supervised release. *See* App.234-40 (amended judgment).[7] Additionally, Little's argument overlooks the most sensible explanation: Congress added the petty-offense clause to Section 3561(a)(3) in 1994 *after* it had stripped sentencing courts of the authority to impose supervised release for a petty-offense defendant to imbue sentencing courts with "latitude" and "flexibility," *see* S. Rep. No. 98-225, at 89, to ensure some degree of supervision—through probation— following incarceration. *See Caplinger*, 2022 WL 2045373, at *7; *see also* App.143 ("[T]he authorization in Section 3561 provides an alternative

_____

[7] For the same reason, Little's reliance on the surplusage canon (Br.26-27) and related claim (*id.* at 27) that the district court's interpretation of Section 3561(a)(3) renders Section 3583(b)(3)'s supervised-release prohibition "meaningless" is unavailing.

way . . . in petty-offense cases to engage in 'postconfinement monitoring' after the defendant is released from imprisonment—by sentencing the defendant to a split sentence."). Little is further incorrect to suggest (Br.24-26) that the district court's decision amounts to judicial "overrid[ing]" of a "permissible legislative policy decision" (*id.* at 25) because it was Congress, and not the courts, that added the petty-offense clause in Section 3561(a)(3).[8] Finally, Little's argument proves too much given his concession (Br.28-29) that a defendant may receive a split sentence—sentenced at the same time to imprisonment and probation—if convicted of two petty offenses. His repeal-by-implication claim would apply just as readily to a sentencing disposition he acknowledges is lawful.

C.    **The district court's interpretation does not create anomalies in the penalty structure or otherwise.**

Little contends (Br.31-37) that the district court's interpretation of Section 3561(a)(3) creates absurdities in the penalty structure and

---

[8] Although Little notes (Br.25-26) that repealing Section 3583(b)(3)'s prohibition on supervised release for petty-offense cases would have been the most "simple and logical way" for Congress to have enabled sentencing courts to provide for postconfinement monitoring, that does not imply it was the only way Congress could accomplish that end.

through a potential "never-ending" imprisonment cycle. Those contentions lack merit.

1. Little's chart (Br.32) of the relevant penalty structure is misleading in several respects. First, it collapses distinct categories by using the non-specific umbrella term "[p]ost-[c]onfinement [m]onitoring." In fact, when comparing the offenses by reference to recognized categories such as supervised release and probation, the anomalies disappear.

| Offense Type | Authorized Term of Post-Conviction Monitoring | |
|---|---|---|
| | Supervised Release | Probation |
| Class A felony | 5 years | Not available |
| Class B felony | 5 years | Not available |
| Class C felony | 3 years | 5 years |
| Class D felony | 3 years | 5 years |
| Class E felony | 1 year | 5 years |
| Class A misdemeanor | 1 year | 5 years |
| Petty Offense (Class B or C misdemeanor, or an infraction) | none | 5 years[9] |
| Sources: 18 U.S.C. §§ 19, 3559, 3561, 3583. | | |

The district court's interpretation of Section 3561(a)(3) in no way alters

---

[9] An infraction, which is an offense that carries a maximum term of five days' imprisonment, 18 U.S.C. § 3559(a)(9), has a maximum probation term of one year, 18 U.S.C. § 3561(c)(3).

that penalty structure.

Second, Little's argument rests on a false equivalency.  To be sure, a defendant sentenced for a Class A misdemeanor could face only a year of supervised release following imprisonment whereas a defendant serving a split sentence on a petty offense could face up to five years of probation following a statutory maximum term of six months in prison. A court imposing sentence for a Class A misdemeanor could impose twice the statutory maximum term of imprisonment available for a petty offense—a year instead of six months, *cf.* 18 U.S.C. § 3559(a)(6) & (7)— and then impose a one-year term of supervised release, *see* 18 U.S.C. § 3583(b)(3).  But a sentencing court could also impose a five-year term of probation on a defendant facing a Class A misdemeanor and, as a condition of probation, require that defendant to serve intermittent confinement in Bureau of Prisons custody "totaling no more than the lesser of one year . . . during the first year of probation."  18 U.S.C. § 3563(b)(10).  Those sentencing options create no anomalies with an interpretation of Section 3561(a)(3) that permits a split sentence for a single petty-offense conviction.

Moreover, Little's interpretation encompasses the same

35

"absurdities" that he claims to identify in the district court's interpretation. For example, while a defendant convicted of two Class A misdemeanors could receive six months in prison but no more than one year on supervised release, *see* 18 U.S.C. § 3624(e) (supervised release must run concurrently); U.S.S.G. § 5G1.2 cmt. n.2(C) (same); Little's interpretation acknowledges (*see* Br.28-29) that a defendant convicted of two petty offenses could receive six months in prison on one count and five years of probation on the other. Under both the district court's and Little's interpretations, in other words, a defendant can face a longer term of post-confinement supervision in a petty-offense case than in a case involving more serious crimes.

2. The putative absurdities that Little conjures (Br.32-35) offer no reason to reject the district court's sound interpretation. The absurdity canon may be applied where the absurdity "consists of a disposition that no reasonable person could intend" and can be remedied "by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error[.]" Scalia & Garner, *supra*, at 237-38. Little's argument fails on both scores.

No unreasonable absurdity arises from a sentencing disposition

where a defendant convicted of a petty offense is sentenced to imprisonment followed by probation. Little agrees that Congress envisioned precisely such a split sentence under Section 3561(a)(3) where a defendant was convicted of two petty offenses (Br.28-29), and he does not contend that that similar outcome is likewise absurd. Instead, Little resorts to a "fanciful hypothetical[]", *United States v. Williams*, 553 U.S. 285, 301 (2008), involving a defendant serving an endless cycle of imprisonment and probation through constant revocation of the latter. Yet in the over 25 years preceding the Sentencing Reform Act's enactment during which a split sentence was lawfully permitted, *see* Br.3 (noting that Section 3561 allowed split sentences from 1958 to 1984), Little identifies no case in which his "scenario" (*id.* at 33) was borne out. That the "never-ending imprisonment" hypothetical never appears to have occurred during a time when a split sentence for a single conviction was unquestionably authorized undermines Little's absurdity argument.

Little also fails to identify a "particular word or phrase" that would repair an "obvious technical or ministerial error." Scalia & Garner, *supra*, at 238. He instead proposes applying the last-antecedent canon

to break apart an integrated phrase—"the same or a different offense"—that does not require elucidation.   Whatever the merits of that argument—and they are flawed for the reasons given above—the absurdity canon "is meant to correct obviously unintended dispositions, not to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense."  *Id.* at 239 (emphasis omitted).

The improbable consequences of Little's improbable hypothetical (Br.36) similarly shed no light on how to interpret Section 3561(a)(3). The district court's interpretation—which simply allows for imprisonment followed by supervision—would not run afoul of the Double Jeopardy Clause by allowing multiple punishments for the same offense, and to the extent Little suggests his "endless cycle" hypothetical would have that effect, treating "postrevocation sanctions as part of the penalty for the initial offense" avoids any double jeopardy problems. *Johnson v. United States*, 529 U.S. 694, 700 (2000).  Little appears to argue that permitting a split sentence for a single petty-offense conviction would change the analysis on whether a defendant is constitutionally entitled to a jury trial, but he fails to explain how the

potential constitutional availability of a jury trial has any relevance to the interpretation of statutes addressing the potential punishments for conviction.[10]  In any event, the Supreme Court has emphasized that the "[p]rimary emphasis" in determining an offense's seriousness "must be placed on the maximum authorized period of incarceration." *Blanton v. North Las Vegas*, 489 U.S. 538, 542 (1989).  Imposing a split sentence for a petty offense would not alter the applicable statutory maximum.[11]

### D.    The rule of lenity does not apply.

Little invokes (Br.37) the rule of lenity.  The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v.*

---

[10] To be sure, whether a defendant is entitled to a jury trial turns in part on the punishment that he or she faces upon conviction. *See Blanton v. North Las Vegas*, 489 U.S. 538, 541 (1989).  But Little does not cite any authority for the proposition that interpretation of statutory provisions governing imprisonment and probation turns on whether the right to a jury trial does or does not attach to the underlying offense.

[11] Little attaches significance (Br.35) to the Supreme Court's description in *United States v. Nachtigal*, 507 U.S. 1 (1993) (per curiam) of probation as an "alternative to incarceration" for a petty offense. *Id.* at 2.  But that sentence simply described the then-operative prohibition against split sentences in all circumstances before the 1994 amendment.

*Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019). In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'" *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

The rule of lenity has no role to play here because text and context resolve the interpretive question. *See* App.143 n.3 (rejecting rule-of-lenity argument that Little failed to raise below). For the reasons given above, "there is no genuine ambiguity in the statute." *Caplinger*, 2022 WL 2045373, at *8.

### E.  Any error was harmless.

Even if the district court's interpretation of Section 3561(a)(3) was erroneous, any error would be harmless because the district court could

have imposed functionally the same sentence under a different sentencing provision, namely, 18 U.S.C. § 3563(b)(10). *Cf. Posley*, 351 F. App'x at 809 (affirming split sentence for single petty-offense conviction on harmlessness grounds).   In Section 3563, Congress set out "[c]onditions of probation."   Among the discretionary conditions of probation a sentencing court may impose is a requirement that a defendant

> remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release.

18 U.S.C. § 3563(b)(10).   Congress enacted that provision to give sentencing courts "[f]lexibility" to impose incarceration as a condition of probation in one of two ways.  S. Rep. No. 98-225, at 98.  First, a court can direct that a defendant be confined in "split intervals" over weekends or at night.  *Id.*  Second, a sentencing court can impose "a brief period of confinement" such as "for a week or two."  *Id.*

Under Section 3563(b)(10), therefore, a sentencing court may sentence a petty offender to serve time in prison as a condition of probation.  For Little, Section 3563(b)(10) would permit the sentencing

court to require him to serve the six-month statutory maximum term of imprisonment (the "lesser of one year or the term of imprisonment authorized for the offense") "during the first year of the term of probation." To be sure, the statute does not define the permissible "intervals of time" for a period of imprisonment imposed as a condition of probation, and the relevant legislative history notes that imprisonment as a condition of probation was "not intended to carry forward the split sentence provided in 18 U.S.C. 3561, by which the judge imposes a sentence of a few months in prison followed by probation." S. Rep. No. 98-225, at 98. But Section 3563(b)(10) would nonetheless readily encompass a sentence that includes both 60 days in prison and a term of probation, which is the sentence Little received.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

MATTHEW M. GRAVES
    United States Attorney
    District of Columbia

JOHN CRABB JR.
    Chief, Capitol Siege Section
    District of Columbia

KENNETH A. POLITE
    Assistant Attorney General
    Criminal Division

LISA H. MILLER
    Deputy    Assistant    Attorney
    General

/S/ JAMES I. PEARCE
    Appellate Counsel,
    Capitol Siege Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave., N.W.
    Suite 1243
    Washington, DC 20530
    (202) 532-4991
    James.Pearce@usdoj.gov

August 29, 2022

# CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), the undersigned counsel of record certifies that the foregoing Brief for the United States was this day served upon counsel for appellant, by notice of electronic filing with the District of Columbia Circuit CM/ECF system.

DATED: AUGUST 29, 2022

s/ James I. Pearce
JAMES I. PEARCE
    Appellate Counsel,
    Capitol Siege Section
    Criminal Division
    U.S. Department of Justice
    950 Pennsylvania Ave., N.W.
    Suite 1243
    Washington, DC 20530
    (202) 532-4991
    James.Pearce@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 8,442 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Century 14-point font in text and Century 14-point font in footnotes.

3. This brief complies with the privacy redaction requirement of Fed R. App. 25(a)(5) because it contains no personal data identifiers.

4. The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk; and

5. This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.7, which is continuously updated, and according to that program is free of viruses.

DATED: AUGUST 29, 2022

s/ James I. Pearce
JAMES I. PEARCE
    Appellate Counsel, Capitol Siege Section
    U.S. Department of Justice