# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 2, 2022          Decided August 18, 2023

No. 22-3018

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMES LITTLE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00315-1)

———

*Joshua B. Carpenter*, Federal Public Defender for the Western District of North Carolina, argued the cause and filed the briefs for appellant.

*James I. Pearce*, Appellate Counsel, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Matthew Graves*, U.S. Attorney for the District of Columbia, *Kenneth A. Polite*, Assistant Attorney General, *Lisa H. Miller*, Deputy Assistant Attorney General, and *John Crabb Jr.,* Chief, Capitol Siege Section.

Before: WILKINS and WALKER, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* WALKER.

Dissenting opinion by *Circuit Judge* WILKINS.

WALKER, *Circuit Judge*: James Little committed a petty offense. The district court sentenced him to prison, followed by probation. The only question on appeal is whether that sentence is authorized by statute.

It is not. Probation and imprisonment are alternative sentences that cannot generally be combined. So the district court could not impose both for Little's petty offense.

## I. Background

## A. James Little's Offense and Sentence

On January 6, 2021, James Little rioted inside the United States Capitol. In his own words, he "took over the Capital [sic]" because "[s]tealing elections is treason." JA 32. He later pleaded guilty to a petty offense: Parading, Demonstrating, or Picketing in a Capitol Building. 40 U.S.C. § 5104(e)(2)(G).

That crime carries a sentence of six months in prison, a fine, or both.[1] *Id.* § 5109(b). As an alternative sentence, a court may give a defendant up to five years of probation, with or without a fine. 18 U.S.C. §§ 3551(b), 3561. But here, the district court chose to mix and match those options, sentencing

---

[1] Because that offense carries a prison term of six months, it is a Class B misdemeanor. 18 U.S.C. § 3559(a)(7). That makes it a "petty offense." 18 U.S.C. § 19 (defining "petty offense" to include Class B misdemeanors).

3

Little to sixty days in prison followed by three years of probation.

To support Little's sentence, the district court relied on § 3561(a)(3), which describes some of the circumstances in which probation is available. Before introducing that provision, we first discuss the federal sentencing scheme and probation's role within it.

**B. Authorized Sentences**

The Sentencing Reform Act of 1984 "comprehensively" outlines the federal sentencing scheme. *Cunningham v. California*, 549 U.S. 270, 286 (2007). The Act's opening section lists a menu of "authorized sentences" under the Federal Criminal Code:

> An individual found guilty of an offense shall be sentenced . . . to —
>
> > (1) a term of probation as authorized by subchapter B;
> >
> > (2) a fine as authorized by subchapter C; or
> >
> > (3) a term of imprisonment as authorized by subchapter D.
>
> A sentence to pay a fine may be imposed in addition to any other sentence.

Pub L. No. 98-473 § 212(a)(2), 98 Stat. 1873, 1988 (codified at 18 U.S.C. § 3551(b)).

That menu makes five sentences available. The first is probation — which lets a court sentence a defendant to a term of court supervision, with an option for short periods of intermittent confinement. 18 U.S.C. § 3563(b)(10). The

4

second is a fine.  The third is imprisonment.  The fourth is probation plus a fine.  And the fifth is imprisonment plus a fine.

Notice that imprisonment plus probation is not an available option.  That's because the list of sentences is disjunctive ("probation . . . fine . . . *or* . . . imprisonment"), indicating that the options on the menu are alternatives that cannot be combined.  *Id.* § 3551(b) (emphasis added).[2]

The provision following the list confirms that reading.  Notwithstanding the disjunctive menu, "a fine may be imposed in addition to any other sentence."  *Id.*  That exception allows a sentencing judge to combine a fine with probation or imprisonment.  Congress's decision to make an exception for fines but not probation strongly suggests that probation cannot be combined with imprisonment.  *Nasdaq Stock Market LLC v. SEC*, 38 F.4th 1126, 1137 (D.C. Cir. 2022) ("mention of one thing" implies the "preclusion" of others).

In other words, the Code's text and structure show that probation and imprisonment may not be imposed as a single sentence.  They are separate options on the menu.[3]

---

[2] The Code's chapter on sentencing mirrors the structure of the menu, dividing probation, fines, and imprisonment into three separate subchapters.  18 U.S.C. ch. 227.  Subchapter A houses general provisions.  Subchapter B discusses probation.  Subchapter C covers fines.  And Subchapter D lays out the rules for imprisonment.

[3] To be sure, Congress *can* make exceptions to that general rule.  Indeed, the Code's chapter on sentencing applies "[e]xcept as otherwise specifically provided."  18 U.S.C. § 3551(a).  So when we say that a court may not impose probation and imprisonment for a single offense, we mean that § 3561(a)(3) does not allow it — not that there are no exceptions to that general rule elsewhere in the

5

## C. Probation and Petty Offenses

To ensure that probation remains a standalone sentence — not a punishment in addition to imprisonment — the Sentencing Reform Act of 1984 put a further restriction on its use. Under the Act, a defendant could not get probation if he was "sentenced at the same time to a term of imprisonment for the same *or a different offense*." Pub. L. 98-473, § 212(a)(2), 98 Stat. 1873, 1992 (emphasis added).

Put differently, in 1984, sentencing judges could not impose probation and imprisonment for *a single offense* — the general rule discussed above. Nor could they impose probation for one offense and imprisonment for a *different offense* sentenced at the same time. *Id.* [4]

_____

Code. But there is no exception for Little's offense. *See* 40 U.S.C. § 5104(e)(2)(G).

Pushing back, the Government says 18 U.S.C. § 3561(a)(3) *is* the kind of specific exception contemplated by § 3551(a), allowing a sentencing court to impose probation and imprisonment for a single petty offense. We disagree. First, § 3551(a) contemplates that exceptions will generally be found outside the Code's chapter on sentencing. *See id.* § 3551(a) (noting that the "provisions of *this* chapter" apply "except as otherwise specifically provided" (emphasis added)). Second, as we explain, § 3561(a) is not an exception to the general rule. *See infra* Part II.

[4] Though the Sentencing Reform Act made probation a sentencing option distinct from imprisonment — and barred giving a defendant probation after imprisonment — it put in place a separate mechanism for monitoring offenders after they are released from prison: supervised release. 18 U.S.C. § 3583; *see United States v. Granderson*, 511 U.S. 39, 43 n.3 (1994) ("before 1984, probation [was] an alternative to a sentence," but the Sentencing Reform Act, "for the first time, classified probation as a sentence"). We discuss supervised release in greater detail in Section II.B.

6

But that regime proved too restrictive. So in 1994, Congress amended the statute. It now reads:

> A defendant who has been found guilty of an offense may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense *that is not a petty offense*.

Pub. L. No. 103-322, § 280004, 108 Stat. 1796, 2096 (codified at 18 U.S.C. § 3561(a)(3)) (emphasis added).

This case turns on those six new words. Does the italicized phrase modify only "a different offense"? If so, a court *may not* impose both imprisonment and probation for a single offense (though it can impose imprisonment for one petty offense and probation for a different offense). Or does the italicized phrase modify "the same or a different offense"? In that case, a sentencing court *may* impose both probation and imprisonment for a single petty offense.

The district court adopted the latter reading and sentenced Little to sixty days in prison plus three years of probation for a single petty offense.

## II. A Defendant May Not Get Probation and Imprisonment for a Single Petty Offense

We disagree with the district court's reading of § 3561(a)(3). *See United States v. Cordova*, 806 F.3d 1085, 1098 (D.C. Cir. 2015) (we review the district court's interpretation of a statute de novo).

7

## A.  Text

Like many statutory lists, § 3561(a)(3) poses a problem: Does a qualifier at the end of the list modify just the list's final item, or all the items that come before it?

The Supreme Court's "typical[ ]" approach to that problem is to apply "the rule of the last antecedent."  *Lockhart v. United States*, 577 U.S. 347, 351-52 (2016).  That rule commands "that a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows."  *Id.* at 351 (cleaned up).  Thus, when Chief Justice Marshall interpreted a statute defining "piracy" as committing "upon the high seas . . . murder or robbery, or any other offense . . . punishable with death," he held that all robberies at sea were piracies — not just robberies punishable by death.  *United States v. Palmer*, 16 U.S. 610, 626 (1818) (cleaned up).

Applied here, the last-antecedent rule tells us that the qualifier "that is not a petty offense" modifies only the phrase that immediately precedes it: "a different offense."  18 U.S.C. § 3561(a)(3).  Read like that, the statute bars a court from imposing probation and imprisonment for a single offense.  A court may impose both only if a defendant gets imprisonment for one petty offense and probation for a different offense.

Of course, the last-antecedent rule is not inexorable.  *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021) ("The rule of the last antecedent is context dependent.").  And the Government contends that this statute is a poor fit for the rule. It says we can't divide up the phrase "the same or a different offense" and apply the qualifier to only part of it.  In the Government's view, "the same or a different" is an adjectival phrase modifying the noun "offense."  If that's correct, then

8

there is only one noun ("offense") for the qualifier ("that is not a petty offense") to modify:

| the same or a different | offense | that is not a petty offense |
|:---:|:---:|:---:|
| [_____] | [_____] | [_____] |
| *adjectival phrase* | *noun* | *qualifier* |

Read that way, it is natural to read the qualifier to reach "the same." And it would follow that prison plus probation is an authorized sentence for a single petty offense.

But that is not the only plausible interpretation of the statute. Rather than reading "the same" as part of an adjectival phrase, "the same" can be read as a pronoun. That's because "the same" is often used as a pronoun meaning "something that has previously been defined or described." Same (pronoun, def. 2), *Webster's Third New International Dictionary* (1993).[5] For example, when describing a recent meal at my favorite restaurant, I could say: "My friend had a steak, and I had the same."

---

[5] True, *Webster's Third* doesn't list that meaning of "same" as the first definition, instead giving precedence to the adjectival meaning. *Cf.* Dissenting Op. 9-10. But that just shows that the adjectival meaning of "same" has been in use for longer. *Webster's Third*, *supra*, at 4a ("In definitions of words of many meanings, the earliest ascertainable meaning is given first. Meanings of later derivation are arranged . . . by dated evidence and semantic development.").

It also may be true that using "the same" as a pronoun is "legalese." Dissenting Op. 10. But Congress often borrows established legal phrasing when it writes statutes. *See FAA v. Cooper*, 566 U.S. 284, 292 (2012). And "the same" has been used as a pronoun in some of this nation's most important legal documents. *See, e.g.*, U.S. Const. art. I, § 5 ("Each House shall keep a journal of its proceedings, and from time to time publish the same . . . .").

9

If "the same" takes that meaning in § 3561(a)(3), the statute makes perfect sense. The first part reads: "A defendant who has been found guilty of *an offense* may be sentenced to a term of probation unless . . . [he] is sentenced at the same time to a term of imprisonment for *the same*." 18 U.S.C. § 3561(a)(3) (emphases added). The final phrase then adds an item to the list: "or a different offense that is not a petty offense." *Id.*

Reading "the same" as a pronoun also explains why Congress used different articles before the items in the list in § 3561(a)(3) ("*the* same"; "*a* different"). By using the definite article "the" before "same," Congress made clear that it was referring to the offense mentioned earlier in the provision. And by using the indefinite article "a" before "different," Congress captured the universe of other offenses for which a defendant might be sentenced. *See Slack Technologies, LLC v. Pirani*, 143 S. Ct. 1433, 1440 (2023) (relying on Congress's use of the "definite article" to interpret a statute).

If "the same" is a pronoun, the end of § 3561(a)(3) is grammatically structured in a way that makes the last-antecedent rule a natural fit:

| the same | or | a different | offense | that is not a petty offense |
|---|---|---|---|---|
| [_____] | | [_____] | [_____] | [_____] |
| *pronoun* | | *adjectival phrase* | *noun* | *qualifier* |

As with other statutory lists, it is less awkward "to apply th[e] modifier only to the item directly before it" than to all the preceding items. *Lockhart*, 577 U.S. at 351; *see FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389-90 (1959). That is particularly true here because there is an intervening adjectival phrase ("a different") between the qualifier ("that is not a petty offense") and the first item in the list ("the same"). *Cf.* Antonin

10

Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 147 (2012) (reading a qualifier to apply to a whole list is most appropriate "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series").

Little offers a third interpretation of the text. He suggests that "the same or a different offense" is an "elliptical construction." Little Br. 16-17. An elliptical construction is one in which a word or phrase is omitted from a sentence because it is implied from context — for instance, "I went to dinner, and John went [to dinner] too." Thus, Little says, § 3561(a)(3) should be read as if Congress had written "the same *offense* or a different offense." If correct, that reading would also make the rule of the last antecedent a natural fit because there are two nouns (one implied and one express) preceding the qualifier ("that is not a petty offense").

To be sure, § 3561(a)(3) is no model of clarity. The text alone struggles to supply an answer to today's case. But we don't read text in a vacuum. And the rest of the statutory scheme confirms that the Government's reading is second best.

**B. Structure**

Courts "must read the words Congress enacted in their context and with a view to their place in the overall statutory scheme." *Turkiye Halk Bankasi v. United States*, 598 U.S. 264, 275 (2023) (cleaned up). Doing so here confirms — for four reasons — that a court cannot impose both imprisonment and probation for a single petty offense.

***First***, the Government's reading would subvert the Sentencing Reform Act's general rule that probation is a

11

standalone sentence, combinable only with a fine, not with imprisonment.

The Act sets up that rule by listing a menu of "[a]uthorized sentences" for a single offense. 18 U.S.C. § 3551. Those sentences are (1) probation, (2) a fine, (3) imprisonment, (4) probation and a fine, or (5) imprisonment and a fine. *Id.*; *see supra* Section I.B. That menu is the cornerstone of the Criminal Code's chapter on sentences. 18 U.S.C. ch. 227.

So when the Government reads § 3561(a)(3) to add a new option — probation plus imprisonment — it's a heavy lift. Unlike mystery novels, statutes rarely end with a surprise twist. And here, the surprise would be especially strange. It would attach a double punishment to petty offenses but not to felonies. So you could get probation plus prison for speeding in a national park, but not for assaulting a park ranger.

***Second***, the Government's reading would turn a *limit* on probation into an *expansion* of its availability.

Section 3561(a) is a restriction on a sentencing court's power. It lists three limits on a sentencing court's authority to select probation as a sentence from the menu in § 3551(b). Those limits are:

    (1)  when a defendant is sentenced for "a Class A or B felony";

    (2)  when another statute "expressly preclude[s]" probation; or

    (3)  when "the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense."

12

18 U.S.C. § 3561(a).

From the third of those limits, the Government would forge an expansion of probation's availability. That's an odd way to read a limit. Imagine your friend said, "You can borrow my car when I'm out of town, except for three scenarios when you cannot." Would you read into the third scenario an occasion to borrow his car when he's *in town*? Probably not if you wanted to stay friends. That's because speakers — including legislatures — do not typically hide new expansions of authority within limits on a grant of authority.

**Third,** the Government's reading of the statute would turn the Sentencing Reform Act's post-confinement-monitoring scheme on its head, subverting two of Congress's deliberate choices.

Choice 1: Congress made *supervised release*, not *probation*, the mechanism for court supervision after time in prison. Supervised release is a term of "postconfinement monitoring," which runs from the time a defendant is released. *Johnson v. United States*, 529 U.S. 694, 696-97 (2000). It is not a standalone sentence, but rather is imposed as "part of" the defendant's term of imprisonment. 18 U.S.C. § 3583(a). Unsurprisingly, the rules governing supervised released are housed within the Code's subchapter on imprisonment. *Id.* ch. 227, subch. D (imprisonment). By contrast, probation is a distinct sentence, housed in its own subchapter. *See id.* § 3551(b); ch. 227, subch. B (probation).[6]

---

[6] Probation and supervised release thus play different roles in the sentencing scheme. "Probation is a standalone sentence that might allow for intermittent imprisonment during its term, while supervised *release* . . . follows a term of imprisonment that has been completed

13

Choice 2: Congress expressly barred supervised release for petty offenses. 18 U.S.C. § 3583(b)(3). And because supervised release is the Code's exclusive form of post-confinement monitoring, that choice ruled out monitoring after prison for single-count petty offenders. Once a petty offender is done with imprisonment he may move on with his life — whereas more serious offenders may be supervised to keep them on the straight and narrow.

The Government's reading of § 3561(a)(3) subverts both those choices. In its view, whenever a defendant is sentenced to imprisonment for a petty offense, the court may *also* impose a term of probation to follow time in prison. Yet that turns probation into a form of post-confinement monitoring. *Cf.* U.S.S.G. ch. 7, pt. A, note 2(b) ("[t]he conditions of supervised release" are almost "the same as those for . . . probation"). And it imposes post-confinement monitoring on single-count petty offenders even though Congress expressly exempted them from it. 18 U.S.C. § 3583(b)(3).

**Fourth**, the Government's reading of § 3561(a)(3) would let a court impose *more* post-confinement monitoring for a petty offense than for more serious misdemeanors and most felonies.

The maximum term of supervised release increases with the severity of the offense. 18 U.S.C. § 3583(b). The most serious felons get five years, some other felons get three years, nonpetty misdemeanants get one year, and petty offenders get none. *Id.*

---

in full." *United States v. Panayiotou*, 2023 WL 417953, at *2 (D.D.C. Jan. 25, 2023).

14

Reading § 3561(a)(3) to prohibit probation and imprisonment for a single petty offense — as we do — preserves that neat correspondence between the severity of the offense and the length of post-confinement monitoring. By contrast, because the Government's reading turns probation into a form of post-confinement monitoring, it would let a court impose *more* monitoring for a petty offense than for more serious misdemeanors and most felonies:

| Offense | Term of Post-confinement Monitoring | |
|---|---|---|
| | Our Reading | Government Reading |
| Class A felony | 5 years | 5 years |
| Class B felony | 5 years | 5 years |
| Class C felony | 3 years | 3 years |
| Class D felony | 3 years | 3 years |
| Class E felony | 1 year | 1 year |
| Nonpetty misdemeanor | 1 year | 1 year |
| Petty offense | None | **5 years**[*] |

If Congress wanted to impose more post-confinement monitoring for petty offenses than for all but the most serious felonies, it could. But we would expect clear language authorizing that bizarre result. Instead, we're left with

---

[*] That's five years of *probation*, to run after a defendant's confinement. In contrast, the table's other figures refer to *supervised release*, also to run after a defendant's confinement.

15

§ 3561(a)(3) — and its text is at best equivocal.  *See supra* Section II.A; *cf. Whitman v. American Trucking Associations*, 531 U.S. 457, 468 (2001).

*To sum up*, there are two possible readings of § 3561(a)(3).  Our reading keeps probation and imprisonment as separate sentences.  18 U.S.C. § 3551(b).  It takes seriously Congress's instruction not to impose post-confinement monitoring on petty offenders.  *Id.* § 3583(b)(3).  And it gives § 3561 a serious role to play in the statutory scheme — allowing imprisonment for one petty offense and probation for a *different* offense, while confirming that prison plus probation is not an available sentence for the same offense. *Id.* § 3561(a)(3).

The other possible reading is the Government's.  It is at odds with the Act's opening list of available sentences.  It turns a limit on probation into an expansion of it.  It sidesteps the bar on supervised release for petty offenders.  And it subjects petty offenders to a term of post-confinement monitoring five times longer than the term imposed on some felons.

That cannot be right.  Congress isn't in the business of putting a statute "at war with itself."  *United States v. American Tobacco Co*., 221 U.S. 106, 180 (1911).  We thus avoid that unnecessary conflict by reading § 3561(a)(3) to preserve the statutory scheme's bar on sentences of prison plus probation for the same offense.[7]

---

[7]  As a fallback, the Government argues that Little's sentence is authorized by 18 U.S.C. § 3563(b)(10), which lets a sentencing court require a defendant on probation to "remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time."  So the Government says the district court's reliance on § 3561(a)(3) was harmless.  *See United States v. Simpson*, 430 F.3d

16

\*    \*    \*

Section 3561(a)(3) is no model of clarity.  For that reason, thoughtful district judges have divided over the best reading of it.  *See United States v. Panayiotou*, 2023 WL 417953, at \*1 & n.2 (D.D.C. Jan. 25, 2023) (disagreeing with the Government, even though "nine judges have adopted [its] position").

But the Government's interpretation is second best.  It says § 3561(a)(3) lets a sentencing court impose probation plus imprisonment for a single petty offense.  Yet that reading conflicts with the statutory scheme.  Congress made probation and imprisonment separate options for separate offenses; barred supervised release for petty offenders; and linked the

---

1177, 1184 (D.C. Cir. 2005) (setting out harmless error test for both constitutional and nonconstitutional errors).  But the Government has not shown that § 3563(b)(10) authorizes a *sixty-day* stint in custody at the start of a defendant's sentence.  Indeed, the statute contemplates *short* periods of confinement like "nights" and "weekends" interspersed throughout probation.  18 U.S.C. § 3563(b)(10); *see United States v. Forbes*, 172 F.3d 675, 676 (9th Cir. 1999) ("a straight sentence of six months is not the intermittent incarceration that this statute permits").  In any event, the district court expressly ruled out imposing intermittent confinement as a condition of probation.  It noted that "the government did not . . . request [it] in Little's case."  JA 130-31.  And it said intermittent confinement "would be unwise" because there were "COVID-19 safety concerns inherent in repeatedly entering and leaving detention facilities."  *Id.*  So the Government cannot show, as it must, that the district court "*would* have" imposed the same sentence had it not misunderstood its sentencing power under § 3561(a)(3).  *United States v. Ayers*, 795 F.3d 168, 176 (D.C. Cir. 2015) (emphasis added).

17

length of post-confinement monitoring to the severity of an offense.  The Government's reading subverts those choices.

We cannot divorce § 3561(a)(3)'s hazy text from that clarifying context.  So we vacate Little's sentence and remand to the district court for resentencing.[8]

*So ordered.*

---

[8] In his plea agreement, Little waived most of his appellate rights. But he reserved the right to appeal a sentence "above the statutory maximum."  JA 22-23.  Little argues that reservation allows this appeal.  Little Br. 38.  Because the Government "opted not to enforce" Little's waiver, we need not decide whether Little reserved the right to bring this appeal.  Govt. Br. 17 n.4; *see United States v. Ortega-Hernandez*, 804 F.3d 447, 451 (D.C. Cir. 2015) (appellate waiver not jurisdictional).

WILKINS, *Circuit Judge*, dissenting:  James Little pleaded guilty to a petty offense under 40 U.S.C. § 5104(e)(2)(G) related to his participation in the January 6, 2021 insurrection at the United States Capitol.  The District Court sentenced him to 60 days' imprisonment, followed by three years of probation.  On appeal, Little offers several different reasons why his split sentence violates federal sentencing statutes.  The majority agrees.  Because I believe that the majority and Little are mistaken, I respectfully dissent.

## I.

A few weeks after the 2020 election, Little uploaded an almost 23-minute YouTube video contesting the election results and mentioning a potential civil war.  On January 5, 2021, Little traveled from North Carolina to Washington, D.C. to attend former President Trump's "Stop the Steal" rally the following day—January 6.  J.A. 54; Appellant Br. 8.

"January 6, 2021, marked a tragic day in American history. The peaceful transfer of power—one of our most important and sacred democratic processes—came under a full-fledged assault."  *United States v. Little*, 590 F. Supp. 3d 340, 342 (D.D.C. 2022).  While Congress assumed its constitutional duty to certify the results of the 2020 election, "[r]ioters" forced their way into the Capitol building.  *Id.*  This violent attack resulted in multiple deaths, injuries, and "inflicted millions of dollars in damage to the Capitol."  *Trump v. Thompson*, 20 F.4th 10, 15 (D.C. Cir. 2021).  Little joined the other rioters who forced their way into the Capitol.

While inside the building, Little smiled and first-bumped other rioters, took photographs of himself, J.A. 13, and sent a text message stating, "We just took over the Capital [sic]!" J.A. 12.  The individual who received the message responded, "And you are bragging? 'We'? THIS IS TREASON!!! IF YOU DON'T CONDEMN THIS, NEVER BOTHER SPEAKING

2

TO ME AGAIN! HORRIBLE, HORRIBLE PEOPLE. IT'S A COUP! YOU OBVIOUSLY HATE AMERICA!!!" *Id.* To this, Little stated, "We are stopping treason! Stealing elections is treason! []We're not going to take it anymore!" and "[y]ou'll thank me for saving your freedom . . . later!" *Id.*

Although Little "did not directly assault officers[,]" his participation was essential because those who *did* engage in violence "were able to do so because they found safety in numbers." *Little*, 590 F. Supp. 3d at 342.

Little was ultimately arrested and charged with four counts:  (1) entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1); (2) disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2); (3) disorderly conduct in a Capitol building or grounds in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) parading, demonstrating, or picketing in a Capitol building in violation of 40 U.S.C. § 5104(e)(2)(G). J.A. 16–17.

In November 2021, Little pleaded guilty to one count of parading, demonstrating, and picketing in a Capitol building in violation of 40 U.S.C. § 5104(e)(2)(G).  *See* J.A. 19–33.  As a Class B misdemeanor carrying a six-month statutory maximum penalty, this is a petty offense.  *See* 18 U.S.C. § 19 (defining petty offenses as including Class B); *id.* § 3559(a)(7) (establishing Class B misdemeanors as offenses carrying a maximum of six months' imprisonment).  Little was sentenced to a term of 60 days' imprisonment, followed by a term of three years' probation.  J.A. 227–28.  In doing so, the District Court noted that this sentence was necessary to "not only punish Little for his conduct but also ensure that he will not engage in similar conduct again during the next election."  *Little*, 590 F.

3

Supp. 3d at 344 ("Only a split sentence would adequately serve the goals of sentencing described in 18 U.S.C. § 3553.").

## II.

Little contends that his sentence of incarceration, followed by a term of probation (commonly called a "split sentence") is illegal. Resolution of the issue turns on the interpretation of 18 U.S.C. § 3561(a), which provides as follows:

> **(a) In general.--**A defendant who has been found guilty of an offense may be sentenced to a term of probation unless--
>
>> **(1)** the offense is a Class A or Class B felony and the defendant is an individual;
>>
>> **(2)** the offense is an offense for which probation has been expressly precluded; or
>>
>> **(3)** the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense.

As we see, Section 3561(a) is a list of exceptions—instances when the district judge *cannot* impose a sentence of probation. It provides that a defendant "may be sentenced to a term of probation unless" one of the three enumerated exceptions in subsections (a)(1), (a)(2) or (a)(3) applies.

4

The District Court found that the probation exception in § 3561(a)(3) did not apply to Little, and thus the court imposed a split sentence, a term of imprisonment followed by a term of probation.

## A.

To understand the probation exception in § 3561(a)(3), we need to take a step back.  Prior to the Sentencing Reform Act of 1984, federal prison sentences were by default indeterminate:  if the court imposed a prison sentence, the defendant would be eligible for parole after serving one-third of the prison term, but whether and when the defendant was released on parole was solely within the discretion of the U.S. Parole Commission.  *See generally United States ex rel. D'Agostino v. Keohane*, 877 F.2d 1167, 1169–70 (3d Cir. 1989).  Hence, even though the court imposed the prison term, the amount of time that the defendant would actually spend in prison was "indeterminate" at the time of sentencing.  As the Supreme Court explained, "under the indeterminate-sentence system, Congress defined the maximum, the judge imposed a sentence within the statutory range (which [the judge] usually could replace with probation), and the Executive Branch's parole official eventually determined the actual duration of imprisonment." *Mistretta v. United States*, 488 U.S. 361, 365 (1989).

On the other hand, "[d]eterminate sentences are those whose length can be measured with relative certainty at the time they are imposed."  ARTHUR W. CAMPBELL, LAW OF SENTENCING § 4:3 (3d ed. 2022).  To impose a determinate sentence prior to the Sentencing Reform Act, courts used split sentences.  In a split sentence, the court imposed a term of imprisonment, but suspended the execution of all except a specific number of days or months, followed by a term of probation.  In this manner, the court could determine exactly

5

how much time the defendant spent in prison, and the defendant was supervised on probation, rather than parole, after his release. If the defendant violated probation, the court could then impose the remainder of the prison term that was suspended.

The preceding example is how the court imposed a split sentence in a single-count case. In a multiple-count case, the court could impose a split sentence by imposing a prison term on one count and a probation term on the second count. *See, e.g.*, *United States v. Nunez*, 573 F.2d 769, 770–72 & n.5 (2d Cir. 1978) (finding split sentence in a single-count case was lawful where court imposed a three-year term of imprisonment with all but six months suspended, followed by a four-year term of probation and noting that "[a] judge could achieve this result . . . on a multi-count indictment by giving a prison sentence on one count and a period of probation on another[]"); *Green v. United States*, 298 F.2d 230, 231–33 (9th Cir. 1961) (affirming a split sentence imposed in a multiple-count case).

The Sentencing Reform Act "makes all [prison] sentences basically determinate. A prisoner is to be released at the completion of his sentence reduced only by any credit earned by good behavior while in custody." *Mistretta*, 488 U.S. at 367 (citing 18 U.S.C. § 3624(a), (b)). Upon release from prison, the defendant is placed on supervised release, and if the defendant violates those terms and conditions, supervised release can be revoked and the defendant can be sent back to prison. *See* 18 U.S.C. § 3583. As a result, split sentences were no longer needed to achieve determinate sentences—every prison term imposed was now determinate, and post-release supervision was handled by supervised release, rather than parole or probation.

6

The Sentencing Reform Act basically replicated the split sentencing method of imposing a determinate sentence by creating its "functional equivalent," which used "a term of imprisonment followed by a period of supervised release." U.S.S.G. § 5.B1.1 cmt. background (citing former 18 U.S.C. § 3561 (repealed 1984); 18 U.S.C. § 3583; and quoting S. S. REP. NO. 98–225 (1983)).

Because the use of split sentences was no longer necessary to achieve determinate sentencing, the Sentencing Reform Act eliminated split sentences in single-count and multiple-count cases.   The Act did so by prohibiting the imposition of probation when "the defendant is sentenced at the same time to a term of imprisonment *for the same or a different offense*." Pub. L. No. 98-473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1992 (emphasis added).  (This was the original language of § 3561(a)(3) in the Sentencing Reform Act.).

For reasons it never articulated, Congress eliminated the option of imposing supervised release following a term of imprisonment for petty offenses shortly after the October 1, 1987, effective date of the Sentencing Reform Act.  Sentencing Act of 1987, Pub. L. No. 100–182, § 8, 101 Stat. 1266 (1987) (amending the supervised release statute, 18 U.S.C. § 3583(b)(3), to add the words "other than a petty offense").

It thus appears undisputed that as of the end of 1987, Congress abolished split sentences for all offenses, whether effectuated by imposing imprisonment and probation in a single-count case or by doing so in a multiple-count case.  It is also undisputed that as of the end of 1987, Congress eliminated supervised release as an option for court supervision following a prison sentence for petty offenses, whether in a single-count case or a multiple-count case.

7

**B.**

In 1994, Congress amended the prohibition on split sentences appearing at 18 U.S.C. § 3561(a)(3) "by inserting 'that is not a petty offense' before the period."  Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Title XXVIII, § 280004, 108 Stat. 1796 (1994).  Thus, the provision now prohibits the imposition of probation when "the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense *that is not a petty offense*."  18 U.S.C. § 3561(a)(3) (emphasis added).  The present dispute centers on how to interpret the 1994 amendment.

As described above, Little was given a split sentence on a single petty offense count:  60 days' imprisonment followed by three years of probation.   Little concedes that the 1994 amendment created an exception to allow for split sentences in cases involving petty offenses, but he contends that Congress only intended to allow split sentences in multiple-count petty offense cases—not in single-count petty offense cases:

> If the restrictive phrase ("that is not a petty offense") modifies only the phrase that precedes it ("a different offense"), then the provision permits a defendant convicted of two petty offenses to receive a sentence of imprisonment on one offense and probation on the other, but prohibits dual punishment—imprisonment and probation—for a single petty offense.

Appellant Br. 14–15.

For several reasons, Little's interpretation of the statute is untenable.

8

Recall the text of 18 U.S.C. § 3561(a)(3) following the 1994 amendment:  probation may be imposed "unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense."  Importantly, the adjectives "same" and "different" modify the same word:  "offense." Immediately after the word "offense[,]" we find the restrictive clause at issue:  "that is not a petty offense." Invoking the last antecedent rule, Little argues that the restrictive clause, "that is not a petty offense," modifies the phrase that precedes it, "a different offense," but not the word "same."

This is an improper application of the rule of the last antecedent.  The rule provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 343 (2005) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26 (2003)).  The most obvious application of the rule is to construe the limiting clause "that is not a petty offense" as modifying the noun that it immediately follows:  "offense."  Alternatively, we could consider the limiting clause as modifying the prepositional phrase that precedes it—"for the same or a different offense"—because "the most natural way to view the modifier is as applying to the entire preceding clause" since "that clause hangs together as a unified whole . . . ." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018).  Thus, whether the limiting clause modifies "offense" or "for the same or a different offense," either construction results in an exception to the split sentence prohibition in both single-count and multiple-count petty offense cases.

Little's argument that the limiting clause instead modifies only the phrase "different offense" turns the sentence into a

9

grammatical jumble.  The adjective "same" still modifies the exact word as the adjective "different," but in Little's construct, the identical word now means "any offense" when modified by "same," and it means "any offense that is not a petty offense" when modified by "different."  The word "offense" cannot have two different meanings when simultaneously modified by separate adjectives.  Further, Little's construct gives meaning to "different offense," but it makes the adjective "same" an orphan, because it no longer has a noun to modify.  When used, the last antecedent rule must be applied "without impairing the meaning of the sentence[,]" Norman Singer, Sutherland on Statutory Construction § 47:33 (7th ed. 2022) (citation omitted).  Little's application of the last antecedent rule fails this fundamental test.[1]

The majority tries to evade this grammatical confusion by asserting that Congress used "same" as a pronoun rather than an adjective.  Maj. Op. 8.    However, at the time of the 1994

---

[1] If Congress had intended to reach the result sought by Little, it would have set forth "same offense" separately, so that "different offense" could be considered a separate referent for the limiting clause that follows.  For instance, Congress could have added the word "offense" and said that probation may be imposed "unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same <u>offense</u> or a different offense that is not a petty offense."  *See* Antonin Scalia & Bryan A. Garner, Reading Law:  The Interpretation of Legal Texts 148–49 (2012) (comparing "Institutions or societies that are charitable in nature (the institutions as well as the societies must be charitable)[]" with the alternative drafting, "An institution or a society that is charitable in nature (any institution probably qualifies, not just a charitable one)[]").  Even if Congress had added the word "offense" after "same," the sentence would still only "probably" have the meaning that Little would prefer.  *Id*. at 149.  But it is a moot point, because that is not what Congress did here.

10

amendment at issue, every major English dictionary (including the one cited by the majority) listed "same" in its adjective form as the first definition. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2007 (1993); OXFORD ENGLISH DICTIONARY 427 (1989); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1033 (1993); AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1088 (1985); RANDOM HOUSE COLLEGE DICTIONARY 1165 (1982).

The majority also relies on Congress's use of the definite article as support for the contention that "same" is being used as a pronoun. Maj. Op. 8-9. That is rather weak sauce, given that the definite article almost always precedes "same," even when the word is clearly used as an adjective. No one says, "My friend had a steak, and I had *a* same steak."

Thus, "same" as an adjective was indisputably the most common usage of the word at the time Congress wrote the statutory text at issue. As one prominent commentator has put it, using same as a pronoun is "legalese" that should be "avoided by all that have any skill in writing," because "[t]he words *it*, *them*, and the noun itself . . . are words that come naturally to us all; *same* or *the same* is an unnatural English expression[.]" BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 796 (3d ed. 2011) (citation omitted). Of course, "the same" can be used as a pronoun properly in some instances, but just because "a definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 568 (2012) (emphasis in original). Consequently, I cannot agree with the majority's attempt to shoehorn the usage of "same" as a pronoun into the statutory text to support Little's interpretation.

11

My interpretation of the statute also comports more with the purpose of the 1994 amendment, as reflected in its title "Authorization of Probation for Petty Offenses in Certain Cases."  *See Dubin v. United States*, 143 S. Ct. 1557, 1567 (2023) (noting that a title can be used to find meaning of a statute); *accord Yates v. United States*, 574 U.S. 528, 539–40 (2015); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998).  With the 1994 amendment, Congress clearly intended to authorize probation "for petty offenses" in instances where probation was not previously allowed.  The one instance in which we are guaranteed to manifest Congress's intent is in a single offense case.  Let me explain.

Suppose Mr. Little had stopped at a bank on his way to the Capitol on January 6, 2021 and handed the teller a note demanding cash, violating 18 U.S.C. § 2113, a felony.  If Little pleaded guilty to bank robbery *and* the instant petty offense— the district judge could sentence Little to three years' probation for the bank robbery, if the judge sentenced Little at the same time to 90 days' imprisonment for the petty offense of parading and demonstrating at the Capitol.  This is so pursuant to either my or the majority's interpretation of Section 3561(a)(3), because the statute allows a sentence of probation to be imposed for the bank robbery "*unless* . . . the defendant is sentenced at the same time to a term of imprisonment for . . . a different offense that is not a petty offense."  Because the "different offense" (parading and demonstrating) is a petty offense, the judge could impose probation for the felony bank robbery, to follow the prison sentence for the petty offense.[2]

---

[2] Conversely, if the judge instead sentenced Little to 90 days' imprisonment on the bank robbery, he could not sentence Little to three years' probation on the parading and demonstrating charge. Because bank robbery is not a petty offense, the exception in Section 3561(a)(3) would apply that disallows a probationary sentence to be imposed at the same time as a prison sentence for a different offense.

12

Thus, even though Congress apparently intended to "authoriz[e] . . . probation for petty offenses" with the amendment, Violent Crime Control and Law Enforcement Act § 280004, the language authorizes probation for any offense, including felonies, so long as the probation is imposed at the same time as a prison sentence for a petty offense. And while this is perhaps an unintended consequence—yet nevertheless the result of Congress's drafting—it remains true because the limitation to petty offenses was placed on the offense that received the prison term, but no similar limitation was placed on the offense that could simultaneously receive the probationary term.

Where the defendant is convicted of only a single petty offense, such as in this case, my reading of the statute would authorize probation to be imposed for that petty offense where it was previously prohibited and in accordance with the intent of Congress as described in the title of the 1994 amendment. Indeed, cases in which there is only a single petty offense are the only instances where that outcome is guaranteed. Where there are two different offenses, application of the 1994 amendment could not only authorize probation when there are two petty offenses, but it could also authorize probation for a *felony* that is sentenced at the same time as a petty offense, as shown in the hypothetical above. Thus, construing the 1994 amendment to apply to a single offense not only comports with the natural and ordinary meaning of "same," it also ensures that Congress's desire to authorize probation for petty offenses where it had previously been prohibited can actually occur in those instances where that outcome is guaranteed.

Construing the text to modify the split sentence exception to apply regardless of whether there is one petty offense or multiple petty offenses also comports with the statutory scheme. In 1984, Congress drafted § 3651(a)(3) in a manner

13

to prohibit split sentences in all instances, regardless of whether the defendant was being sentenced on one count or multiple counts. It would stand to reason that when Congress made an exception to the split-sentence prohibition for petty offenses, it would do so for all split sentences involving petty offenses, regardless of whether the defendant was being sentenced on one count or multiple counts.

Indeed, precluding split sentences for single petty offenses affirmatively frustrates the purposes of sentencing as set forth in the Sentencing Reform Act. "When meting out sentences, judges must consider the goals of punishment, deterrence, incapacitation, and rehabilitation." *United States v. Godoy*, 706 F.3d 493, 496 (D.C. Cir. 2013) (citing 18 U.S.C. § 3553(a)(2)). "These four considerations—retribution, deterrence, incapacitation, and rehabilitation—are the four purposes of sentencing generally, and a court must fashion a sentence 'to achieve the[se] purposes ... to the extent that they are applicable' in a given case." *Tapia v. United States*, 564 U.S. 319, 325 (2011) (quoting 18 U.S.C. § 3553(a)). *See also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018); *Rita v. United States*, 551 U.S. 338, 347–48 (2007). However, Congress's message in the Sentencing Reform Act was, "Do not think about prison as a way to rehabilitate an offender," *Tapia,* 564 U.S. at 330, because the Act "expressly prohibited a district court in crafting an initial sentence from considering a defendant's need for rehabilitation in support of a prison sentence." *Concepcion v. United States*, 142 S. Ct. 2389, 2400 (2022) (citing 18 U.S.C. § 3582(a)). *See also Mistretta*, 488 US. at 367 (explaining that the Act "rejects imprisonment as a means of promoting rehabilitation"). Rather than prison, probation and supervised release are the proper means of effectuating the rehabilitative purposes of sentencing under the Act. *See Tapia*, 564 U.S. at 330.

14

The district judge has a duty to "consider all of the. § 3553(a) factors to determine whether they support the sentence requested by a party," *Gall v. United States*, 552 U.S. 38, 49–50 (2007), when sentencing a defendant for a single petty offense, just as in any other case. *See* 18 U.S.C. § 3553(b) (in absence of a sentencing guideline, "court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2)"); U.S.S.G. § 1B1.9 (sentencing guidelines do not apply to Class B and C misdemeanors or infractions). Accordingly, when imposing a sentence for a single petty offense, the judge *must* consider "the overarching sentencing purposes of "retribution, deterrence, incapacitation, and rehabilitation." *Rosales-Mireles*, 138 S. Ct. at 1903 (quoting *Tapia*, 564 U.S. at 325). The judge could reasonably conclude that a short prison sentence is necessary as a means of retribution and deterrence in a single petty offense case. But what if the judge also finds that the defendant needs rehabilitation? The Sentencing Reform Act "instruct[s] sentencing courts to consider rehabilitation as one of the purposes of *sentencing* but bars them from seeking to achieve rehabilitation through imprisonment." *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) (citing 18 U.S.C. § 3582(a) and 18 U.S.C. § 3553(a)). Consequently, where supervised release is not an option, the only way that the judge can comply with the foundational requirements of the Sentencing Reform Act is to impose a sentence of imprisonment to be followed by a term of probation – a split sentence. Indeed, in this very case, the district judge found that "[o]nly a split sentence would adequately serve the goals of sentencing described in 18 U.S.C. § 3553," *Little*, 590 Supp. 3d at 344.

The majority's interpretation prevents this district judge from complying with Section 3553(a), a bedrock mandate of the Sentencing Reform Act. That's a colossal lift for a secondary definition of a word.

15

If petty offenders need a short prison sentence to punish them, to reflect the seriousness of the offense and to deter them from future criminal conduct, they need it regardless of whether they committed one petty offense or two. If petty offenders need rehabilitation following imprisonment, they need it regardless of whether they committed one petty offense or two. If Congress no longer wanted to force judges to choose either punishment or rehabilitation for petty offenses – contrary to the dictates of Section 3553(a) – there is no reason to believe it intended to eliminate this Hobson's choice only when the defendant was convicted of two petty offenses, but not one. It should go without saying that Congress intended for district judges to comply with Section 3553(a) in *every* sentencing of a petty offense, whether for a single count or for multiple counts. The majority points to nothing indicating that Congress intended to render Section 3553(a) impotent in single petty offense cases when it enacted the 1994 amendment. We should not do so here. *See Ali v. Federal Bureau of Prisons,* 552 U.S. 214, 222 (2008) (construction of a statutory term "must, to the extent possible, ensure that the statutory scheme is coherent and consistent"); *Hibbs v. Winn,* 542 U.S. 88, 101 (2004) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ....") (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp.181–186 (rev. 6th ed.2000)).

The majority makes much of the anomalies between imprisonment followed by supervised release and imprisonment followed by probation. Maj. Op. 11-14. But the majority must concede that, notwithstanding any such anomalies that might result, Congress intended to allow imprisonment followed by probation for defendants sentenced to multiple offenses, whether it is two petty offenses or a felony

16

and a petty offense.  That concession seriously undermines any concern about anomalies and incongruities, given that there is no question that Congress intended to allow one form of split sentences (the multiple-count form involving at least one petty offense).  The only question is whether we must override the most natural reading of the text based on something never uttered by Congress: it could live with the resulting anomalies created by split sentences in multiple offense cases, but the anomalies that result in the other form of split sentences (the single-count form) were simply a bridge too far.  The majority points to no such evidence, and I find none.

* * *

In sum, the majority has departed from the natural and common reading of the statutory text, and in doing so, has undermined 18 U.S.C. § 3553(a), the foundational provision governing the crafting of sentences under the Sentencing Reform Act.  The District Court should be affirmed,[3] and I respectfully dissent.

_____

[3] Following vacatur of the sentence on remand, it appears that the district judge could impose a sentence of imprisonment or probation, and that he would not be limited to the 90 days or three years that were imposed before if he concluded that either a longer prison or probationary term were required to meet the goals of 18 U.S.C. § 3551.  *See Davenport v. United States*, 353 F.2d 882, 884 (D.C. Cir. 1965) (per curiam) ("[A] defendant who successfully attacks an invalid sentence can 'be validly resentenced though the resentence increased the punishment.'")  (quoting *Hayes v. United States*, 249 F.2d 516, 517 (D.C. Cir. 1957)).